**In re the MARRIAGE OF Renate MANZO, Petitioner,**

**and**

**Lawrence D. Manzo, Respondent.**

**No. 81SC25.**

Supreme Court of Colorado, En Banc.

Feb. 28, 1983.

Jim Travis Tice, Littleton, for petitioner.

Brian Maguire, Littleton, for respondent.

DUBOFSKY, Justice.

We granted certiorari to review the court of appeals' unpublished opinion, *In re the Marriage of Manzo,* No. 80CA0216, November 28, 1980, affirming a decision by the Denver district court in a dissolution of marriage action to set aside a separation agreement for division of marital property. The district court determined that the agreement, measured· by a fair, just and reasonable standard, resulted in a property division which was unconscionable under Colorado's Uniform Dissolution of Marriage Act, sections 14–10–101, *et seq.,* C.R.S.1973 (1982 Supp.). Because we believe that the division here was fair, just, and reasonable, we reverse.

Renate Manzo (the wife) filed a petition for dissolution of marriage on April 13, 1979. On February 21, 1979, she and Lawrence D. Manzo (the husband) had signed a separation agreement to the effect that she would set the price for and sell their home in Parker. The agreement provided that the wife would receive the first $60,000 of net proceeds from the sale of the house, after deducting the realtor's commission and other expenses of sale (including the balance due on the first deed of trust which at the time of the hearing was slightly more than $37,000), and the husband would receive any excess of the net proceeds over $60,000. The husband was not represented by counsel at the time he signed the agreement.

At the hearing on permanent orders on January 14, 1980, the wife testified that the house was listed for a price of $129,000. When the house did not sell, the listing was lowered to $119,000, and the wife testified that she expected the house eventually would sell for between $100,000 and $110,-000. She also testified that she and her husband had determined that she should receive the first $60,000 of the net proceeds from the sale of the house in order for her to ʼpurchase a condominium with a down payment sufficiently high to keep monthly payments within her resources. Her gross monthly income at the time of the hearing was $800; her husband's gross monthly income was $1800.

The husband sought to set aside the separation agreement on the basis that when he signed it he thought the home in Parker would sell for between $140,000 and $150,-000. He claimed that his unilateral mistake of fact resulted in an agreement which could give him as little as five to ten percent of the net proceeds from the sale of the house when he had intended to receive forty to fifty percent of the net proceeds. Therefore, he requested that the court set aside the agreement on the basis that the property division was not fair, just or reasonable.

The order entered by the district court gave custody of the parties' two teen-age children to the wife, required the husband to provide child support of $125 per month per child, found that the parties had waived maintenance, and ordered that when the house was sold the net proceeds be divided sixty percent to the wife and forty percent to the husband, taking into account that the separation agreement provided the wife with no maintenance. The court set aside the parties' property settlement agreement

on the basis that the husband's receipt of $10,000 compared to the wife's receipt of $60,000·was not fair, just and reasonable.

The court of appeals affirmed, ruling that the district court applied the proper standard for reviewing a separation agreement before it is incorporated into a decree of dissolution and that the record supported the district court's finding that the agreement was not fair, just and reasonable. We granted certiorari to consider whether section 14–10–112(2) permits a district court to set aside as unconscionable a separation agreement property disposition provision which the court deems not fair, just and reasonable when the court does not find that the provision was procured by overreaching, concealment of assets, or sharp dealing not consistent with the obligation of marital partners to deal fairly with each other. Although we now determine that the court may set aside a separation agreement property disposition provision without first finding that the provision was improperly procured, in this case we overturn the district court's decision to set aside the provision because, when viewed in light of the totality of the economic circumstances resulting from the agreement, we believe the provision was fair, just and reasonable.

## I.

■■■ Prior to its incorporation in a dissolution decree a separation agreement is a contract between the parties to a marriage. *In re Marriage of Deines,* 44 Colo.App. 98, 608 P.2d 375 (1980). The purpose of the separation agreement is "to enable divorcing parties to reach an amicable out-of-court settlement of their claims to the property of the other...." *Newman v. Newman,* 653 P.2d 728, 733 (Colo.1982). However, before a separation agreement concerning property is incorporated in the dissolution decree, it is subject to review by the district court under section 14–10–112(2) for unconscionability. Section 14–10–112(2) provides:

> In a proceeding for dissolution of· marriage ... the terms of the separation

agreement, except the terms providing for the custody, support, and visitation of children, are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, ... that the separation agreement is unconscionable.

This section was adopted verbatim from the Uniform Marriage and Divorce Act (UMDA)[1], § 306. The Commissioners' Note to UMDA § 306 describes the purpose of the section and the meaning of unconscionable:

> An important aspect of the effort to reduce the adversary trappings of marital dissolution is the attempt, made by Section 306, to encourage the parties to reach an amicable disposition of the financial and other incidents of their marriage....
>
> Subsection (b) undergirds the freedom allowed the parties by making clear that the terms of the agreement respecting maintenance and property disposition are binding upon the court unless those terms are found to be unconscionable. The standard of unconscionability is used in commercial law, where its meaning includes protection against one-sidedness, oppression, or unfair surprise (see § 2–302, Uniform Commercial Code), and in contract law, *Scott v. U.S.,* 12 Wall (U.S.) 443 [20 L.Ed. 438] (1870) ("contract ... unreasonable and unconscionable but not void for fraud"); .... *In the context of negotiations between spouses as to the financial incidents of their marriage, the standard includes protection against overreaching, concealment of assets, and sharp dealing not consistent with the obligations of marital partners to deal fairly with each other.*
>
> In order to determine whether the agreement is unconscionable, the court may look to the economic circumstances of the parties resulting from the agreement, and any other relevant evidence such as the conditions under which the

1. The title of the UMDA in Colorado is the    Uniform Dissolution of Marriage Act.

agreement was made, including the knowledge of the other party. If the court finds the agreement not unconscionable, its terms respecting property division and maintenance may not be altered by the court at the hearing.

(Emphasis added.) 9A *Uniform Laws Annotated,* UMDA § 306, at 136–137 (Master edition 1979).

■ The wife here urges that we follow either the standard for unconscionability in the Commissioners' Note (emphasized above) or the standard for an unconscionable contract under the Colorado Uniform Commercial Code, section 4–2–302, C.R.S. 1973. The Official Comment to section 4–2–302 describes the basic test of unconscionability as:

> ... whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.... The principle is one of the prevention of oppression and unfair surprise [citation omitted] and not of disturbance of allocation of risks because of superior bargaining power....

We note that traditionally a contract may not be rescinded because one party has made a unilateral mistake as to value unless the other party knew or had reason to know of the error. *J. Calamari and J. Perillo, Contracts* § 9–27 at 306 (2d Ed.1977).[2]

The wife argues that the case law relied upon by the court of appeals in developing the fair, just and reasonable standard cannot be harmonized with the purposes of section 14–10–112(2) and the meaning of unconscionable as set forth in the Commissioners' Note, and that the General Assembly intended, by its adoption of section 14–10–112(2), to reverse earlier case law. The Colorado appellate decisions considering the meaning of unconscionable in section 14–10–112(2) have not relied on either the Commissioners' suggested language or the commercial definition of unconscionability. Instead, the court of appeals has defined an unconscionable separation agreement provision for property disposition as one which is not fair, just and reasonable. *In re Marriage of Carney,* 631 P.2d 1173 (Colo.App. 1981); *In re Marriage of Wigner,* 40 Colo. App. 253, 572 P.2d 495 (1977).[3] In *Wigner* the court of appeals specifically rejected the need to find overreaching, inequality of bargaining power or other elements of fraud before setting aside a property settlement agreement as unconscionable *prior* to its incorporation in a dissolution decree.[4]

---

**2.** The record here does not support a finding that the wife knew or had reason to know that the husband intended to receive forty to fifty percent of the net proceeds from the sale of the house. The husband testified that he and his wife had visited similar homes, valued between $140,000 and $150,000, in Arvada. The wife testified that she never thought the house would sell for more than $119,000 and that the agreement on dividing the proceeds from sale of the house was based on her need for another place to live.

**3.** This Court has not addressed the definition of unconscionable as it relates to property disposition provisions of settlement agreements under section 14–10–112(2). However, we have defined unconscionability in the context of maintenance agreements under section 14–10–114, C.R.S.1973, as existing "when enforcement of the terms of the agreement results in a spouse having insufficient property to provide for his reasonable needs and who is otherwise unable to support himself through appropriate employment. *See In re Lowery,* 39 Colo.App. 413, 568 P.2d 103 (1977), *aff'd* 195 Colo. 86, 575

P.2d 430 (1978); *In re Wigner,* 40 Colo.App. 253, 572 P.2d 495 (1977); *In re the Marriage of Eller,* 38 Colo.App. 74, 552 P.2d 30 (1976); ...." *Newman v. Newman, supra* at 735.

**4.** In this case as in *Wigner,* the court of appeals distinguished the test of unconscionability within the meaning of section 14–10–112(2) from the test which governs the revocation or modification of a property disposition settlement agreement incorporated in a decree of dissolution under section 14–10–122(1), C.R.S. 1973, which provides in pertinent part: "... The provisions as to property disposition may not be revoked or modified unless the court finds the existence of conditions that justify the reopening of a judgment." In *Lowery* the court of appeals determined that fraud or overreaching constitutes conditions justifying the reopening of a judgment, relying on *Lay v. Lay,* 162 Colo. 43, 425 P.2d 704 (1967) and *Ingels v. Ingels,* 29 Colo.App. 585, 487 P.2d 812 (1971). Section 14–10–122(1) is patterned on UDMA § 316, and the Commissioners' Note to § 316 says, "In accordance with presently existing

The court of appeals in *Wigner* relied on cases which pre-dated the adoption of section 14–10–112—*Hobbs v. Hobbs,* 72 Colo. 190, 210 P. 398 (1922), *Hill v. Hill,* 70 Colo. 47, 197 P. 236 (1921), and *Daniels v. Daniels,* 9 Colo. 133, 10 P. 657 (1886)—and which were decided at a time when separation agreements were not considered to be in the interest of public policy. *See* Commissioners' Note to § 306, 9A *Uniform Laws Annotated, supra* at 136. Those early cases held that a court was not bound by an agreement between the parties relating to alimony or property unless the transaction was untainted by fraud and the contract in all respects was fair, just and reasonable, taking into consideration the circumstances of the parties.

Before adoption of the Uniform Act in Colorado, this Court and the court of appeals had accepted as "the policy of this state" that a husband and a wife were competent to enter into a binding contract settling their property, alimony and support rights in contemplation of divorce so long as the contract was fair and free from fraud, collusion or compulsion. *Newey v. Newey,* 161 Colo. 395, 421 P.2d 464 (1966); *Irwin v. Irwin,* 150 Colo. 261, 372 P.2d 440 (1962); *In re Marriage of Hines,* 525 P.2d 517 (Colo. App.1974); *McMillion v. McMillion,* 522 P.2d 125 (Colo.App.1974); *compare Hobbs v. Hobbs, supra; Hill v. Hill, supra; Daniels v. Daniels, supra.* In *McMillion,* the court of appeals stated the requirements for finding the maintenance provision of a separation agreement unconscionable as follows:

In order to support a finding of unconscionability, there must be evidence in the record of some overreaching on the part of one of the parties such as that which results from an inequality of bargaining power or under other circumstances in which there is 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' *Williams v. Walker-Thomas Furniture Co.,* 121 U.S.App.D.C. 315, 350 F.2d 445, 18 A.L.R.3d 1297.

522 P.2d at 129. In *Hines,* a property division case under the Uniform Act, the test of unconscionability was stated in nearly identical terms.

We believe that the test of unconscionability articulated by the court of appeals in *McMillion,* decided after the General Assembly's adoption of the Uniform Act but based on facts which arose before the Act went into effect, is consistent with the definition of unconscionability in the Commissioners' Note.[5] The wife's suggested interpretation of the emphasized language in the Commissioners' Note, *see* page 671, *supra,* ignores the Note's direction that to determine whether an agreement is unconscionable, a court "may look at the economic circumstances of the parties resulting from the agreement, and any other relevant evidence such as the conditions under which the agreement was made, including the knowledge of the other party." 9A *Uniform Laws Annotated, supra* at 137. This language, coupled with the more traditional

law, the provisions of the decree respecting property disposition may not be altered unless the judgment itself can be reopened for fraud or otherwise under the laws of the state." 9A *Uniform Laws Annotated, supra* at 184. C.R. C.P. 60(b) provides that a court may relieve a party from a final judgment for mistakes, inadvertence, surprise, excusable neglect, fraud, misrepresentation, or other misconduct of an adverse party. *See also In re Marriage of Scheuerman,* 42 Colo.App. 206, 591 P.2d 1044 (1979).

5. In *Williams v. Walker-Thomas Furniture Co.,* 350 F.2d 445 (D.C.Cir.1965), the United States Court of Appeals for the District of Columbia invalidated as unconscionable a revolving installment consumer contract under which the

balance due on every item purchased continued until the balance due on all items had been paid. Both *Williams,* which is referred to by the court of appeals in *Hines* and *McMillion,* and the Commissioners' Note are grounded in *Scott v. Wall,* 79 U.S. (12 Wall.) 443, 445, 20 L.Ed. 438 (1870) where the United States Supreme Court said:

If a contract be unreasonable and unconscionable, but not void for fraud, a court of law will give to the party who sues for its breach damages, not according to its letter, but only such as he is equitably entitled to. *See Williams v. Walker-Thomas Furniture Co.,* 350 F.2d at 448, and Commissioners' Note, *supra* at pp. 671–672 of this opinion.

fiduciary commercial language protecting against over-reaching, concealment of assets, and sharp dealing not consistent with the obligations of marital partners to deal fairly with each other, provides an opportunity for a court evaluating a separation agreement to look at both the circumstances surrounding the making of the agreement and the circumstances at the time of the decree. Although a court will not always be bound by a contract subject to such review, the effect of section 14–10–112(2) is to allow the parties the first opportunity to divide their property by agreement, within the limits of fairness and reasonableness. *See Block v. Block,* 593 S.W.2d 584 (Mo. App.1979) (interpreting Mo.Rev.Stat. § 452.325.2 (1978), which is identical to section 14–10–112(2)).

Other courts considering the same question have formulated a standard which mixes principles of contract law with a court review of the circumstances of the parties which would result if the contract is enforced. The New York Court of Appeals recently noted that " . . . a separation agreement which is regular on its face will be recognized and enforced by the courts in much the same manner as an ordinary contract. However, because of the fiduciary relationship between husband and wife, separation agreements generally are closely scrutinized by the courts, and such agreements are more readily set aside in equity under circumstances that would be insufficient to nullify an ordinary contract." *Levine v. Levine,* 56 N.Y.2d 42, 451 N.Y.S.2d 26, 28, 436 N.E.2d 476, 478 (1982). Illinois' appellate courts have interpreted the standard of unconscionability in Ill.Rev.Stat. ch. 40, § 502(b) (1979), which is identical to section 14–10–112(2), as protecting against overreaching, concealment of assets, duress, fraud, misrepresentation, and sharp dealing

not consistent with the obligations of marital partners to deal fairly with each other, as well as allowing the court's consideration of economic circumstances to determine whether a separation agreement is one-sided or oppressive. *Miller v. Miller,* 98 Ill. App.3d 1084, 54 Ill.Dec. 439, 424 N.E.2d 1342 (1981).[6] In a more recent case, the Illinois appellate court ruled that a settlement of property rights agreement will be evaluated to determine "if it is reasonably fair and sufficient, in light of the station in life and circumstances of the parties, and it will be set aside if it is unfair and inequitable." *In re Marriage of Hawkins,* 106 Ill. App.3d 68, 61 Ill.Dec. 945, 435 N.E.2d 786, 788 (1982). *See also Wilke v. Wilke,* 51 Ill.App.3d 438, 9 Ill.Dec. 462, 366 N.E.2d 973 (1977); *Hellige v. Hellige,* 50 Ill.App.3d 209, 7 Ill.Dec. 935, 365 N.E.2d 220 (1977).

▮ Although the terms of the separation agreement relating to property disposition are presumed binding upon the court without a specific finding of unconscionability, the court is not to accept blindly the agreed-upon terms. *In re Marriage of Eller,* 38 Colo.App. 74, 552 P.2d 30 (1976). Consistent with both the Commissioners' Note to the UMDA and case law prior to the adoption of section 14–10–112(2), we conclude that before a court incorporates property division provisions of a separation agreement into a dissolution decree, it should first review the provisions for fraud, overreaching, concealment of assets, or sharp dealing not consistent with the obligations of marital partners to deal fairly with each other, and then look at the economic circumstances of the parties which result from the agreement, including a determination whether under the totality of the circumstances the property disposition is fair, just and reasonable.[7]

---

6. In *Miller,* the husband's claim was that the separation agreement was unconscionably one-sided in that the sales of the parties' real estate did not or would not yield the anticipated amounts. The court ruled that because the husband received approximately 40% of the parties' property, the agreement was not unconscionable.

7. Compare the provisions of section 14–10–113(1), C.R.S.1973 (and 1982 Supp.) listing considerations to be taken into account by a trial judge when the court divides marital property in a dissolution action. Section 14–10–113(1) provides:

"... the court ... shall divide the marital property, without regard to marital misconduct, in such proportions as the court deems

## II.

■ We realize that the standard we apply for court review of the division of property in a separation agreement allows the court more discretion than the standard we recently enunciated in *Newman v. Newman, supra,* for court review of the division of property in an antenuptial agreement. At the time an antenuptial agreement is entered, "there is an assumption in the law that the parties are essentially able to act independently and rationally concerning their present and future property interests in relation to their prospective marriage." *Id.* at 733. In *Newman* we held that antenuptial agreements with respect to property division are "subject to a fairness review within the common law context of review for fraud, overreaching, or sharp dealing. Such an analysis must take place as of the time of execution of the contract and not as of the time of the separation...." *Id.* at 733. Courts reviewing separation agreements prior to entry of a decree of dissolution need more latitude than is allowed for review of antenuptial agreements because of the public policy concern for safeguarding the interests of a spouse whose consent to the agreement may have been obtained under more emotionally stressful circumstances, especially if that spouse is unrepresented by counsel. *See Marseno v. Marseno,* 7 Fam.L.Rep. (BNA) ¶ 2110, Del. Fam.Ct. Newcastle Cty., (November 14, 1980) ("Agreements between spouses have characteristics not possessed by ordinary business contracts. More often than not, they are conceived and executed in an emotionally charged atmosphere."). Moreover, separation agreements are made in contemplation of the dissolution of marital status and are incorporated in a final judgment of the court terminating the marriage and settling joint obligations of the parties.[8]

■ In the case before us, there is no indication of overreaching, fraud, concealment of assets, or sharp dealing inconsistent with the obligations of marital parties to deal fairly with each other. Moreover, in light of the totality of the economic circumstances which result from the agreement, there is insufficient evidence to support a finding that the agreement is not fair, just and reasonable. The husband did not contradict the wife's testimony that the property division was intended to produce for her the amount the parties agreed was necessary to purchase another home for her and the children. The record does not support the district court's rejection of the parties' separation agreement as unconscionable.

Judgment reversed.

ROVIRA, J., does not participate.

---

just after considering all relevant factors including: (a) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker; (b) The value of the property set apart to each spouse; (c) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children; and (d) Any increases or decreases in the value of the separate property of the spouse during the marriage or the depletion of the separate property for marital purposes."

8. Section 14–10–112(4) and (5) provide, in pertinent part:
"(4) If the court finds that the separation agreement is not unconscionable as to support, maintenance, and property:
  (a) Unless the separation agreement provides to the contrary, its terms shall be set forth in the decree of dissolution ..., and the parties shall be ordered to perform them....
(5) Terms of the agreement set forth in the decree may be enforced by all remedies available for the enforcement of a judgment, including contempt...."