**In re the MARRIAGE OF Edward I. GOLDIN, Appellant,**

**and**

**Janet B. Goldin, Appellee.**

**No. 95CA0362.**

Colorado Court of Appeals, Div. II.

July 25, 1996.

Timothy B. Walker, Littleton, for Appellant.

Donald Chad Goldy, Howard Morrison, Denver, for Appellee.

Opinion by Judge MARQUEZ.

In this dissolution of marriage action, Edward J. Goldin (husband) appeals from the permanent orders awarding Janet B. Goldin (wife) property. We reverse and remand with directions.

The parties' fourteen-year childless marriage dissolved in 1994. Throughout the marriage, the parties bought and sold classic and collector cars. Prior to the marriage, husband had 19 such cars, with an insured value of $219,000.

Husband owned an insurance agency prior to and during part of the marriage, but because of his disability, he sold it to his son from a prior marriage. In addition to the $4167 the parties received from husband's son as a monthly payment for the insurance agency, they received as much as $10,800 per month under husband's disability coverage. However, in late 1991, the insurance company terminated benefits.

Alleging that the termination was wrongful, husband filed suit asserting breach of contract and tort claims against the insurance company that had provided disability benefits. The suit settled for $500,000, and the net amount of $333,000 was escrowed during the pendency of the proceedings for dissolution.

The parties received proceeds from another lawsuit for stock market losses (Prudential–Bache lawsuit), the division of which is the subject of an agreement signed by the parties which predated, and was attached to, the petition for dissolution. The agreement provided that husband would receive 80% of the stock lawsuit proceeds, and wife would receive the remaining 20%. Additionally, the parties executed a second agreement which provided that the proceeds from the sale of one house (Aubrey Way) would be divided equally.

The trial court disregarded these agreements and divided both of these assets equally. Furthermore, certain cars were classified as each parties' separate property, while others were divided equally as marital property.

A jointly-owned limited partnership was valued at $77,740 and awarded to husband. The disability lawsuit proceeds were classified as marital property and were equally distributed. The insurance agency was classified as partially husband's separate property, and wife received 31% of the remaining payments due under the sale of the agency. Finally, the trial court determined that certain single premium life insurance policies insuring the life of wife's mother belonged to the mother, rather than wife.

I.

A.

Husband first contends that the trial court erred in characterizing the disability lawsuit settlement proceeds as marital property subject to equitable distribution, rather than husband's separate property. Based on the record before us, we perceive no error.

Although the record reflects that the net amount received in settlement of the lawsuit was placed in escrow, there is no clear indication that any of this settlement amount represented lost future income, which husband asserts would be his separate property. However, we can determine from the chronology of events in the record that there was a period of approximately three years between the time of the termination of benefits and the time the decree of dissolution entered. Thus, even if husband had received the disability payments during this three-year period, that amount would have been marital property. *See In re Marriage of Simon,* 856 P.2d 47 (Colo.App.1993) (proceeds from a private disability insurance policy acquired with marital funds during the marriage are marital property subject to division).

Furthermore, it appears that the amount of benefits that would have been paid during that three-year period is more than the amount of the net proceeds from the settlement. As the trial court noted, "I do know ... that it was settled for substantially less than even the contract payments would have been." From these circumstances, we conclude the trial court's decision to classify the

proceeds as marital property was not an abuse of discretion and will not be disturbed. *See In re Marriage of Hulse,* 727 P.2d 876 (Colo.App.1986).

## B.

■ Husband contends next that, even if the disability lawsuit proceeds are classified as marital property, the trial court erred in their distribution by failing to make findings regarding what portion of the proceeds were attributable to husband's lost future earnings and the future costs associated with his disability. We disagree.

For the reasons discussed above, the court did not abuse its discretion in failing to address the issue of apportionment of the settlement amount to determine what was attributable to loss of future earnings. *See In re Marriage of Hulse, supra.* Absent a clear indication of what the settlement amount represented, there is no basis upon which the court could make such an apportionment.

## II.

Husband's next contention is that the trial court erred in not applying the parties' agreements concerning the division of the proceeds from the Prudential–Bache lawsuit and one of their houses. We conclude the matter must be remanded to the trial court for reconsideration of the agreements under the Colorado Marital Agreement Act, § 14–2–301, et seq., C.R.S. (1987 Repl.Vol. 6B) (Act).

■ In construing statutes, we must give effect to the intent of the General Assembly by looking first at the language of the statute. A statute must be read and considered as a whole, and, where possible, it should be construed to give consistent, harmonious, and sensible effect to all of its parts. *Brooke v. Restaurant Services, Inc.,* 906 P.2d 66 (Colo.1995).

■ Under the Act, parties may contract with respect to the rights of each of the parties in any of the property of either or both of them, and to the disposition of property upon the dissolution of the marriage. Section 14–2–304(1), C.R.S. (1987 Repl.Vol.

6B); *In re Marriage of Christen,* 899 P.2d 339 (Colo.App.1995).

A "marital agreement" is defined in § 14–2–302(1), C.R.S. (1987 Repl.Vol. 6B) and means an agreement either between prospective spouses made in contemplation of marriage or between present spouses, but only if signed by both parties prior to the filing of an action for dissolution of marriage or for legal separation. It must be in writing and signed by both parties, and is enforceable without consideration. Section 14–2–303, C.R.S. (1987 Repl.Vol. 6B). The content of such agreements can include a number of areas, including, *inter alia,* the disposition of property. Section 14–2–304(1), C.R.S. (1987 Repl.Vol. 6B).

Absent involuntary execution or unfair and unreasonable disclosure of property or financial obligations, a marital agreement is enforceable. Section 14–2–307, C.R.S. (1987 Repl.Vol. 6B); *In re Marriage of Christen, supra* (holding that a clear and unambiguous agreement must be enforced as written).

■ Here, the parties complied with the formalities of the Act, and the agreements, although written in longhand by wife, met the statutory definition of a "marital agreement." *See* §§ 14–2–302(1) and 14–2–303. Moreover, the content came within the purview of the Act, in that it concerned the disposition of a house and the Prudential–Bache lawsuit proceeds. *See* § 14–2–304(1)(a), C.R.S. (1987 Repl.Vol. 6B).

The court's only comments with respect to these agreements were as follows:

> The Prudential–Bache, Aubrey Way, the prior separation agreement—it's not a separation agreement. It was only—it only was meant to be a partial agreement. It was never approved by any court. I discounted it and I considered Prudential–Bache and Aubrey Way part of the whole order of this Court and rejected it as being a small piece of the assets which I was asked to decide in this case.

On appeal, in response to husband's contentions, wife asserts only that the agreements were the result of coercion and actual and veiled threats by husband and that the facts of this case fit within this court's ruling

in *In re Marriage of Christen, supra.* Accordingly, we do not address the applicability of § 14–10–112, C.R.S. (1995 Cum.Supp.).

■ The trial court apparently reasoned that, because the agreements had not received court approval, they should be construed as "proposed" agreements. However, the Act does not require court approval of the agreement prior to its enforcement.

■ Furthermore, the court erred in discounting the agreements on the ground that they were only "partial" agreements. Nothing in the Act requires that an agreement may be enforceable only if it is a complete agreement as to the disposition of all of the parties' property.

Therefore, on remand, unless the trial court finds that the agreements were not executed voluntarily, or that one party did not have fair and reasonable disclosure of the property of the other, it shall apply the written agreements of the parties as to the disposition of the proceeds from the Prudential–Bache lawsuit and the proceeds of the sale of the house described in the agreements. *See* § 14–2–307, C.R.S. (1987 Repl.Vol. 6B).

### III.

Husband also contends that the trial court abused its discretion in awarding him the entire limited partnership. Husband argues that the partnership was more of a liability than an asset and that the trial court overvalued it at $77,740. We perceive no abuse of discretion.

■ The trial court is imbued with broad discretion in matters of property division, *In re Marriage of Hoffman,* 650 P.2d 1344 (Colo.App.1982), and a ruling supported by competent evidence will not be disturbed on review. *In re Marriage of Bookout,* 833 P.2d 800 (Colo.App.1991). Furthermore, the valuation of property will not be disturbed on review if it is reasonable in light of the evidence as a whole. *In re Marriage of Foottit,* 903 P.2d 1209 (Colo.App.1995).

■ Here, the trial court rejected the recommendation of the court-appointed certified public accountant (CPA) that the property be divided equally between the parties so

that, to the extent the valuation may be excessive, both parties would share equally in any overvaluation. The trial court correctly refrained from continuing joint ownership of the partnership, *see In re Marriage of Simon, supra* (joint ownership is contrary to public policy of discouraging continued litigation and ongoing financial interaction between divorced spouses), and the valuation, less capital calls, was supported by the evidence. Thus, the disposition of the partnership was not an abuse of discretion.

### IV.

Next, husband contends that the trial court, in dividing the marital property equally, erred in disregarding husband's contribution of premarital property to the marital estate. We disagree.

The trial court, in dividing marital property, must consider all relevant factors, including the contribution of each spouse to the acquisition of marital property, the value of the property set apart to each spouse, the economic circumstances of each spouse, and any increases or decreases in the value of the separate property of the spouse during the marriage or the depletion of marital property for marital purposes. Section 14–10–113(1), C.R.S. (1987 Repl.Vol. 6B).

■ The division of marital property must be equitable, but need not be mathematically equal. *In re Marriage of Jaeger,* 883 P.2d 577 (Colo.App.1994).

■ The court-appointed CPA testified that the value of husband's premarital assets was $945,000 and accounted for 87% of the premarital property brought to the marriage, while the value of wife's premarital estate, $143,000, accounted for 13% of the total premarital property. In the property division, husband received $114,631 in separate property, while wife received $112,792. Husband argues that he is entitled to a greater return of his premarital property.

However, the court-appointed CPA testified that most of the premarital property had been dissipated and commingled with marital property and that he had difficulty tracing existing property to premarital assets.

Thus, the trial court could properly conclude the property of the parties could no longer be traced to husband's separate property and, therefore, that the premarital property did not retain its separate character. *See In re Marriage of Renier,* 854 P.2d 1382 (Colo. App.1993). For this reason, we find no error in the trial court's equal division of property.

V.

We also reject husband's contention that the trial court erred by failing to allow husband's counsel a reasonable amount of time for cross-examination of wife.

▬ The right to a full and fair hearing, including the right to cross-examination, must be afforded to litigants in dissolution proceedings. And, a court's interest in administrative efficiency may not take precedence over this due process right. *In re Marriage of Goellner,* 770 P.2d 1387 (Colo. App.1989) (error to restrict the presentation of wife's case to six hours, when most of that time was used for cross-examination).

▬ Here, husband asserts he was allowed approximately 1 hour and 15 minutes for cross-examination. However, the trial spanned four days, during which husband presented 10 witnesses and cross-examined wife's witnesses. The record indicates his cross-examination of wife consumed over 90 pages of transcript. The trial court's time management did not appear inflexible or unduly restrictive. Thus, husband's right to cross-examination was not abridged.

VI.

Husband also contends that the trial court erred in failing to consider the tax consequences when awarding the proceeds from the disability lawsuit and the sale of the insurance agency. We agree in part.

▬ The decision to consider tax consequences is within the trial court's discretion, and must be based on the totality of the circumstances. *See In re Marriage of Bayer,* 687 P.2d 537 (Colo.App.1984).

▬ We find no error in the trial court's exclusion of the tax consequences when awarding the proceeds from the disability lawsuit, if in fact there were any inequitable consequences. However, as to the taxation of the proceeds for the sale of the insurance agency, we note that the trial court, at temporary orders, ruled that tax consequences would be taken into account if the insurance agency was found to be husband's separate property. Since the proceeds were ultimately found to be partially separate property, the tax consequences should have been considered.

Although the trial court stated at permanent orders that the tax consequences were considered, we are unable to review that determination without specific findings. Thus, on remand, the trial court should clarify its order in this regard.

VII.

▬ We also reject husband's contention that the trial court erred in its method of dividing the classic and collector cars. We find no error in the trial court's ruling that the winner of a coin toss performed by a disinterested third party would have first choice in choosing the cars, and that the parties would then proceed with their choices on an alternating basis. Since the court also ordered a cash payment to balance out differences in car values, and husband won the toss, there was no prejudice.

VIII.

Husband's final contention is that the trial court erred in its determination that the insurance policies and investment account in wife's and wife's mother's names were property of the mother. Again, we disagree.

▬ Based on evidence that wife merely managed the accounts for her mother and repaid funds she borrowed from the accounts, the trial court found that the accounts were the mother's property. Although there was evidence to the contrary, we cannot say that the trial court erred in finding otherwise. Since there is competent evidence to support the finding, we will not disturb it on review. *See In re Marriage of Bookout, supra.*

The judgment of the trial court is reversed and the cause is remanded for appropriate disposition of the assets covered in the marital agreements, and for clarification of and specific findings as to the tax consequences on the proceeds of the sale of the insurance agency. On remand, the trial court may reconsider the overall property distribution.

PLANK and NEY, JJ., concur.