**In re the MARRIAGE OF Matthew L. BISQUE, Appellant,**

**and**

**Cheryl L. Bisque, Appellee.**

**No. 99CA1609.**

Colorado Court of Appeals,
Div. IV.

Jan. 4, 2001.

Rehearing Denied March 22, 2001.

Certiorari Denied Sept. 10, 2001.

Joseph H. Antolinez, Melissa E. Miller, Denver, CO, for Appellant.

Law Offices of Rene P. Koller, Rene P. Koller, Arvada, CO, for Appellee.

Opinion by Judge TAUBMAN.

Matthew L. Bisque (husband) appeals the permanent orders dissolving his marriage to Cheryl L. Bisque (wife) and awarding her approximately 91% of the marital property, as provided in an agreement the parties signed and included in a mail-order Mexican divorce kit. We reverse and remand for further proceedings.

During this childless seven-year marriage, both parties were employed. Husband worked for a company owned by his brother, while wife has worked for large, publicly-held companies where she made more money than husband.

On March 23, 1998, wife purchased and received a kit to obtain a mail-order Mexican divorce. Without benefit of counsel, the parties signed an agreement before a notary public on March 25, 1998, under which wife received the bulk of the marital estate, including the marital home and an adjacent lot. Wife waived any interest in stock in the company for which husband worked, but the court found that the parties never held any ownership interest in that company.

The next day, the parties mailed the completed paperwork for the Mexican divorce, which included special powers of attorney referencing the March 25 agreement, and they drove to the Jefferson County courthouse where they signed deeds conveying their real estate to wife. The eventual Mexican decree also referenced the March 25 agreement and indicated that the case was filed March 27, 1998, and that a divorce was granted a week later on April 3, 1998.

Approximately two months later, husband filed this Colorado action for dissolution. Wife then requested a declaratory judgment that the marriage had already been dissolved by the Mexican court. Determining that the parties' mail-order Mexican divorce was invalid, the court granted a dissolution.

The court also found that the agreement was "extremely" and "grossly unfair," and that husband signed the agreement because "[h]is will was simply overborne by his aggressive, persistent, overbearing spouse." The court noted that wife "seems to be centered on money and very pushy," and was "unusually aggressive and demanding," while husband was "unusually passive [and] codependent." The court found that husband "is less driven by money than is" wife, and that wife was unhappy because husband's "job did not produce the income she thought appropriate."

However, the court concluded that the agreement was a marital agreement, rather than a separation agreement, because it was signed prior to the filing of the Colorado dissolution action. The court further concluded that the agreement was valid because husband signed it voluntarily after fair and reasonable disclosure of the parties' assets. Thus, the court declined to set the agreement aside. Finding that the parties' property had already been divided pursuant to the agreement, the court determined that no further permanent orders were necessary.

### I. Marital or Separation Agreement?

▬ Husband contends the court erred in concluding that the agreement constituted a marital agreement, rather than a separation agreement, solely because it was signed before the filing of the Colorado dissolution of marriage action. More specifically, husband argues that the agreement, which was signed two months before the petition for the Colorado dissolution, but just the day before it was mailed with the Mexican divorce papers, constitutes a separation agreement because it was "attendant upon" the parties' dissolution of marriage. We agree.

A marital agreement is "an agreement either between prospective spouses made in contemplation of marriage or between present spouses, but only if signed by both parties prior to the filing of an action for dissolution of marriage or for legal separation." Section 14–2–302(1), C.R.S.2000; *see In re*

*Marriage of Goldin,* 923 P.2d 376 (Colo.App. 1996). In contrast, a separation agreement promotes "the amicable settlement of disputes between the parties to a marriage attendant upon their separation or the dissolution of their marriage." Section 14–10–112(1), C.R.S.2000; *see In re Marriage of Lemoine–Hofmann,* 827 P.2d 587 (Colo.App. 1992).

The two types of agreement are subject to different standards of review. A marital agreement is enforceable unless it was executed involuntarily or there was not a fair and reasonable disclosure of the property or financial obligations involved. Section 14–2–307(1), C.R.S.2000; *In re Marriage of Goldin, supra.* In contrast, a separation agreement is enforceable unless it is found to be unconscionable. Section 14–10–112(2), C.R.S.2000; *In re Marriage of Smith,* 928 P.2d 828 (Colo.App.1996).

 The conscionability standard applicable to separation agreements is different "because of the public policy concern for safeguarding the interests of a spouse whose consent to the agreement may have been obtained under more emotionally stressful circumstances, especially if that spouse is unrepresented by counsel." *In re Marriage of Manzo,* 659 P.2d 669, 675 (Colo.1983); *see also In re Marriage of Seely,* 689 P.2d 1154 (Colo.App.1984). Thus,

> before a court incorporates property division provisions of a separation agreement into a dissolution decree, it should first review the provisions for fraud, overreaching, concealment of assets, or sharp dealing not consistent with the obligations of marital partners to deal fairly with each other, and then look at the economic circumstances of the parties which result from the agreement, including a determination whether under the totality of the circumstances the property disposition is fair, just and reasonable.

*In re Marriage of Manzo, supra,* 659 P.2d at 674.

Because the statutes concerning marital agreements and separation agreements do not specifically address agreements entered into prior to filing for, but in contemplation of, dissolution of marriage, we must resolve the tension between the statutes by application of rules of statutory construction.

 Our primary task in construing a statute is to ascertain and give effect to the intent of the General Assembly. *People v. Zapotocky,* 869 P.2d 1234 (Colo.1994). In order to discern legislative intent, we look first to the language of the statute itself. *Farmers Insurance Exchange v. Bill Boom Inc.,* 961 P.2d 465 (Colo.1998). When statutes potentially conflict, a court should, where possible, adopt a construction that would harmonize provisions rather than create an inconsistency or conflict in the statutory scheme. *People v. Hampton,* 876 P.2d 1236 (Colo.1994).

We look first to the language of § 14–10–112(1) itself and construe "attendant upon" separation or dissolution according to its common usage. *See In re Marriage of Gedgaudas,* 978 P.2d 677 (Colo.App.1999). "Attendant" is defined as accompanying or connected with. *See Webster's Third New International Dictionary* 140 (1986); *see also People v. Cole,* 926 P.2d 164 (Colo.App. 1996) ("attendant circumstances" defined as facts surrounding an event). Thus, the clear and unambiguous intent of § 14–10–112(1) is that, if an agreement is executed under circumstances accompanying, connected with, or surrounding a contemplated divorce or separation, it is a separation agreement.

The bright line rule in § 14–2–302(1), describing marital agreements as those made prior to filing for dissolution or legal separation, is equally clear and unambiguous.

The apparent conflict between these statutes may be resolved by requiring the trial court to make a specific factual finding whether an agreement is "connected with" or "attendant upon" a contemplated dissolution of marriage or legal separation. *Cf. In re Marriage of Lemoine–Hofmann, supra* (trial court made factual finding that agreement constituted a marital agreement, rather than a separation agreement, because the parties entered into a valid oral agreement prior to marriage, even though they memorialized the agreement prior to their separation).

■ Accordingly, we hold that when an agreement between present spouses is entered into "attendant upon" separation or dissolution, the agreement must be considered a separation agreement, even if it was signed prior to filing for dissolution or legal separation. In our view, this interpretation furthers the policy of safeguarding the interests of a spouse contemplating and preparing for the emotionally stressful step of dissolution of marriage. *See In re Marriage of Manzo, supra.*

In adopting wife's argument, the trial court interpreted two cases, *In re C.G.G.*, 946 P.2d 603 (Colo.App.1997), and *In re Marriage of Goldin, supra,* as holding that agreements made prior to filing "must be reviewed [as marital agreements] under C.R.S. 14–2–307, even when it is obvious that the agreements were made in contemplation of an actual, planned divorce." We recognize that in *In re C.G.G., supra,* an agreement entered into eight days prior to filing for dissolution was characterized as a marital agreement. Likewise, in *In re Marriage of Goldin, supra,* an agreement that pre-dated the filing of the petition for dissolution was also treated as a marital agreement.

However, the precise issue here—whether an agreement entered into prior to filing for, but in contemplation of, dissolution constituted a separation agreement—was not addressed in either case. Thus, we decline to adopt the trial court's interpretation of those cases as mandating a finding that any agreement signed prior to filing for dissolution or legal separation constitutes a marital agreement.

Here, the findings and record indicate that the agreement was signed just two days before filing of the Mexican case. Furthermore, in its bench ruling, the court specifically found that the agreement "was made in anticipation or contemplation of the divorce."

Thus, the court made sufficient findings, based on the record, which support the conclusion that the agreement was clearly "attendant upon" a dissolution. Accordingly, the trial court erred in reaching the legal conclusion that the agreement constituted a marital agreement under § 14–2–302(1). Instead, it constitutes a separation agreement

and is entitled to review under the conscionability standard. *See* § 14–10–112(1); *People v. Smith,* 13 P.3d 300 (Colo.2000) (on mixed questions of law and fact, appellate court must defer to trial court's findings of fact, but must undertake *de novo* review of trial court's legal conclusions); *In re Marriage of Manzo, supra.*

## II. Unconscionability of Separation Agreement

■ Husband contends next that the separation agreement must be set aside as unconscionable. Again, we agree.

The trial court made oral findings supporting the determination that husband's emotional state was adversely affected by the circumstances surrounding the execution of the agreement. First, the court found that there is "no question" but that wife was the "impetus for the divorce" and that she "is a very driven woman; insisting, consistently pushing for those things which she desires, and somewhat manipulative in the way that she does it." The court found that "those were factors in this ultimate dissolution and agreement." This sentiment is mirrored in the written finding that husband's "will was simply overborne by his aggressive, persistent, overbearing spouse."

Furthermore, the court, in both its oral and written findings, made numerous emphatic references to the unfairness of this separation agreement. The court found that "[i]f marital agreements could be set aside in Colorado solely because they divide the marital estate unfairly, this one would be set aside." Thus, the only reason the court declined to set aside the agreement was its legal conclusion that an agreement entered into prior to the parties' filing for dissolution must be considered a marital agreement. However, since we have concluded otherwise, this agreement is subject to review under the conscionability standard, including whether it is fair, just, and reasonable. *See In re Marriage of Manzo, supra.* Thus, it must be set aside.

On remand, the court shall divide the marital property equitably without reference to the separation agreement, but rather based

on the parties' circumstances at the time the division is to become effective. *See* § 14–10–113, C.R.S.2000; *In re Marriage of Wells,* 850 P.2d 694 (Colo.1993).

## III. Setting Aside Property Conveyances

Husband also contends that the trial court erred in finding that, even if the agreement could be disregarded, "the question would still remain whether the various conveyances [of the property to wife] could be set aside without a showing of fraud or its functional equivalent." While the trial court merely raised the question without resolving it, we nonetheless address husband's contention in order to simplify the proceedings on remand. As a threshold matter, we reject wife's assertion that this issue was not preserved for appeal because it was not raised in the trial court. Our review of the record convinces us otherwise, and therefore, we address the merits of husband's argument. We agree with husband that, under the circumstances here, the conveyances do not affect his interest in the property.

Section 14–10–113(3), C.R.S.2000, provides: All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of coownership.... The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (2) of this section.

The types of property excepted from "marital property" for purposes of a marital property division are listed in § 14–10–113(2), C.R.S.2000, which provides, *inter alia,* that " 'marital property' means all property acquired by either spouse subsequent to the marriage except ... (d) Property excluded by valid agreement of the parties." *In re Marriage of Huff,* 834 P.2d 244 (Colo.1992); *In re Marriage of Bartolo,* 971 P.2d 699 (Colo.App.1998).

Here, the conveyance to wife was challenged only on the basis of the invalid agreement, rather than as an alleged gift. Although wife relies on the trial court's oral findings regarding a gift, we note that the trial court was not referring to this case, but only to the facts in *In re Marriage of Bartolo, supra* (conveyance of title to marital property from husband to wife was held valid, where husband's execution and delivery of the deed to martial residence and vacating the premises, together with wife's recordation of the deed and possession, demonstrated husband's donative intent to restore the property to wife as her sole and separate property). Furthermore, husband testified that he acted in accordance with the agreement when he conveyed the property to wife. Accordingly, we do not address the effect of § 14–10–113(2)(a) regarding property acquired by gift.

Since the separation agreement has been set aside, the property was not excluded from division as marital property by valid agreement of the parties. On remand, the trial court shall determine what property is marital and then equitably divide it. *See* § 14–10–113.

Our disposition obviates the need to address husband's remaining contentions.

The judgment is reversed, and the cause is remanded for an equitable division of the marital property without regard to the separation agreement.

MARQUEZ and CASEBOLT, JJ., concur.