**In re the MARRIAGE OF Lynne C. LAFAYE, Appellant,**

**and**

**Edward E. Lafaye, Appellee.**

**No. 01CA1210.**

Colorado Court of Appeals, Div. I.

Sept. 11, 2003.

Certiorari Denied May 3, 2004.

Antolinez Miller, LLC, Joseph H. Antolinez, Melissa E. Miller, Denver, Colorado, for Appellant.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Colorado; Allen C. Christensen, Attorney at Law, P.C., Allen C. Christensen, Edwards, Colorado, for Appellee.

Opinion by Judge LOEB.

Lynne C. LaFaye (wife) appeals from the permanent orders entered upon dissolution of her marriage to Edward E. LaFaye (husband) and from the trial court's order denying enforcement of a written marital agreement. We affirm.

The parties were married in 1984, and in March 1995, wife commenced a dissolution of marriage action. In March 1996, during the pendency of that action, the parties began to negotiate a post-nuptial agreement with a view toward reconciliation. The parties and husband's counsel executed a post-nuptial agreement on November 7 and 8, 1996. By late November 1996, however, the parties' attempted reconciliation had already failed.

When wife's counsel executed the agreement in mid-December 1996, he learned that the dissolution matter was still pending. Then, "to confirm the validity and enforceability of their Post–Nuptial Agreement and consistent with their intent," counsel for both parties signed a stipulation to dismiss the dissolution action, nunc pro tunc to November 6, 1996, the day prior to the signing of the agreement. On December 21, 1996, the court entered an order dismissing the first dissolution action, nunc pro tunc to November 6, 1996.

Subsequently, wife commenced a second dissolution action. In May 1998, the court conducted a two-day evidentiary hearing concerning the validity of the post-nuptial agreement under the Colorado Marital Agreement Act (Act), § 14–2–301, et seq., C.R.S.2002. The court determined that the post-nuptial agreement was not an enforceable marital agreement, but reserved decision on whether it could be enforceable on some other basis.

A permanent orders hearing was conducted over five days in early 2000. The court declined to enforce the post-nuptial agreement under equitable principles or promissory estoppel and determined the permanent orders issues by applying the relevant por-

tions of the Uniform Dissolution of Marriage Act (UDMA), § 14–10–101, et seq. C.R.S. 2002.

## I.

Wife first contends that the trial court erred as a matter of law in determining that the parties' post-nuptial agreement was unenforceable and dividing the marital property according to the statutory criteria under the UDMA. We disagree.

## A.

■ Wife argues that the court erred by refusing to enforce the agreement under the Act and by overruling the stipulated nunc pro tunc order dismissing the earlier dissolution of marriage action. She also argues that the court failed to recognize the effect of the voluntary dismissal of the first dissolution action. We reject these arguments.

The Act defines a "marital agreement" as "an agreement either between prospective spouses made in contemplation of marriage or between present spouses, but only if signed by both parties prior to the filing of an action for dissolution of marriage or for legal separation." Section 14–2–302(1), C.R.S.2002. Such an agreement "becomes effective upon marriage, if signed by both parties prior to marriage, or upon the signatures of both parties, if signed after marriage." Section 14–2–305, C.R.S.2002.

Here, the trial court acknowledged that the first dissolution action had been dismissed by court order nunc pro tunc to the day before the parties actually executed the agreement. However, it found with record support that the parties' post-nuptial agreement was not enforceable under the plain language of the Act because it was signed by husband and wife during the pendency of the prior dissolution action. *See In re Marriage of Bisque*, 31 P.3d 175 (Colo.App.2001)(bright line rule in § 14–2–302(1), describing marital agreements as those made prior to filing for dissolution or legal separation, is clear and unambiguous). The record also reflects that wife's counsel warned her on several occasions that the agreement would not be valid if she signed it before the prior dissolution action had been dismissed.

As noted, the trial court's determination was based upon application of the plain language of § 14–2–302(1) to an agreement that wife sought to enforce in the subsequent dissolution action through a C.R.C.P. 57 motion. Thus, wife's characterization of the court's ruling as a collateral attack on the order dismissing the first dissolution action has no basis.

■ We also disagree with wife that the trial court was required to give effect to the nunc pro tunc dismissal of the prior dissolution action based upon the stipulation signed by counsel.

■ The Act's requirement that present spouses sign a marital agreement prior to the filing of a dissolution action is based on public policy considerations that seek to safeguard the interests of a spouse involved in the emotionally stressful circumstances of a dissolution action. *See In re Marriage of Manzo*, 659 P.2d 669 (Colo.1983)(assumption that parties in intact marriage will deal fairly and rationally disappears under emotionally stressful circumstances created by filing of dissolution action); *In re Marriage of Bisque, supra.*

Here, not only did the parties sign the agreement while a dissolution action was pending, but counsel had admonished the parties not to sign the agreement until that action had actually been dismissed. By the time counsel signed the stipulation for dismissal in mid-December 1996, the parties' attempted reconciliation had failed. Nothing in the record indicates that the trial court was aware of this chronology when it signed the nunc pro tunc dismissal.

Under these circumstances, we conclude that giving effect to the nunc pro tunc dismissal would be contrary to the public policy of the Act. Hence, and the trial court did not err in refusing to enforce the agreement under the plain language of the statute.

We are not aware of any appellate opinion that has upheld a marital agreement based on a nunc pro tunc dismissal of a pending dissolution action. The cases cited by wife are distinguishable and are based on other

policy considerations not relevant here. For example, in *Diebold v. Diebold*, 79 Colo. 7, 243 P. 630 (1926); *Perdew v. Perdew*, 99 Colo. 544, 64 P.2d 602 (1936); and *In re Estate of Becker*, 32 P.3d 557 (Colo.App. 2000), *aff'd sub nom. In re Estate of DeWitt*, 54 P.3d 849 (Colo.2002), nunc pro tunc divorce decrees were used to validate a party's remarriage occurring after the entry of an order dissolving the marriage and before the effective date of the decree. Further, unlike the facts here, the retroactive dates for the nunc pro tunc orders in those cases corresponded to dates on which events dispositive to the dissolution rights actually occurred in court. *See, e.g., In re Estate of Becker, supra* (decree entered nunc pro tunc to date of final orders hearing).

Finally, nunc pro tunc orders have not been approved when they would have operated to reduce or defeat a party's procedural rights. *See In re Estate of Becker, supra; Joslin Dry Goods Co. v. Villa Italia, Ltd.*, 35 Colo.App. 252, 539 P.2d 137 (1975)(nunc pro tunc order cannot be used to reduce the time nor defeat the right to file an appeal). Similarly, giving effect to the nunc pro tunc dismissal here would be contrary to the public policy that forms the basis for the plain language of the Act.

In this case, the public policy protecting spouses during a dissolution remained a viable concern despite the voluntary and technical nunc pro tunc dismissal of the first dissolution action. Indeed, the record here illustrates what can result from the emotional turmoil surrounding the parties' separation, anticipated dissolution of their marriage, attempted reconciliation, and subsequent final separation and dissolution.

### B.

■ We also reject wife's argument that the trial court should have enforced the agreement as a separation agreement.

■ Section 14-10-112(1), C.R.S.2002, provides in pertinent part: "To promote the amicable settlement of disputes between the parties to a marriage attendant upon their separation or the dissolution of their marriage, the parties may enter into a written separation agreement...." An agreement is attendant upon separation or dissolution if it is executed under circumstances accompanying, connected with, or surrounding a contemplated dissolution or separation. *In re Marriage of Bisque, supra.*

■ Whether an agreement is executed "attendant upon" a contemplated dissolution is a question of fact for the trial court, and the court's findings will not be set aside unless clearly erroneous. We review de novo the court's legal conclusion that the agreement was not a separation agreement. C.R.C.P. 52; *In re Marriage of Bisque, supra.*

Here, the trial court found with record support that the purpose of the agreement was to facilitate reconciliation. Thus, the court found that the agreement was not attendant upon a contemplated dissolution or separation.

This finding is supported by the record and will not be disturbed on appeal. Accordingly, we agree with the trial court's legal conclusion that the post-nuptial agreement was not a separation agreement.

### C.

■ We further reject wife's argument that the parties' agreement was enforceable under general contract principles or based on the doctrines of promissory or equitable estoppel.

These doctrines apply where, unlike here, the UDMA does not govern. *See In re Marriage of Plesich*, 881 P.2d 379 (Colo.App.1994)(policies sought to be furthered by UDMA take precedence over any concepts of contract law); *cf. Salzman v. Bachrach*, 996 P.2d 1263 (Colo.2000)(general contract laws and equitable rules apply to two cohabiting, unmarried individuals who may contract legally with one another and enforce the contract in court, so long as sexual relations are not the sole consideration for the agreement).

■ Similarly, in domestic relations matters, the doctrine of equitable estoppel is reserved for extraordinary circumstances, such as failed adoption proceedings. *See,*

*e.g., In re Marriage of Dennin,* 811 P.2d 449 (Colo.App.1991). Here, in view of counsel's admonition not to sign the agreement until the earlier dissolution action had been dismissed, wife did not demonstrate that she reasonably relied to her detriment upon the acts or representations of husband or that she had no knowledge or convenient means of knowing that the dissolution action was still pending when she signed the agreement. *See In re Marriage of Smith,* 7 P.3d 1012 (Colo.App.1999).

Finally, we are not persuaded that the trial court should have enforced husband's alleged oral promises to transfer oil and gas interests to wife during the marriage or to contribute to her son's medical school education. *In re Marriage of Lemoine–Hofmann,* 827 P.2d 587 (Colo.App.1992), relied on by wife, does not compel a contrary result. In that case, the court did not consider application of the Act, and, unlike here, the fact that an oral agreement had been made and the circumstances of the agreement were not disputed. Further, the court found in that case that the oral agreement was binding based on part performance. No such finding was made here with respect to the oil and gas interests.

As to husband's alleged promise to contribute to the medical school education of wife's son, the trial court here found with record support that this promise was not a binding contractual obligation, but only an assurance to assist while the family was intact. Because the family had dissolved by November 1996, we agree with the trial court that it was not required to enforce this alleged oral promise by husband.

Accordingly, we conclude that the trial court did not err in holding the agreement unenforceable.

## II.

■ Wife also asserts that the trial court abused its discretion in limiting maintenance to seven years. She argues that the evidence did not support incremental decreases in the award and that the court should have reserved jurisdiction over the issue. We disagree.

■ The trial court has broad discretion in determining the amount and duration of a maintenance award. *In re Marriage of Fisher,* 931 P.2d 558 (Colo.App.1996). Absent an abuse of discretion, a trial court's award of maintenance will not be reversed, and when the order is supported by competent evidence, it should not be disturbed on appeal. *In re Marriage of Sim,* 939 P.2d 504 (Colo.App.1997).

■ A trial court may retain jurisdiction over maintenance pursuant to § 14–10–114, C.R.S.2002, if, at the time of permanent orders, an important future contingency exists that can be resolved in a reasonable and specific period of time. *In re Marriage of Folwell,* 910 P.2d 91 (Colo.App.1995).

Here, the trial court found with record support that wife worked prior to the marriage in various administrative and management positions, had owned a small business, and held a securities license. The court also found that wife was unable to support herself with reasonable employment because she did not have the earning capacity that she would have had if she had worked during the sixteen-year marriage, when she did not work outside the home by agreement of the parties. The court found that wife wanted to further her education and should not be expected to undertake a new career immediately.

The court concluded that wife was without sufficient property to meet her reasonable needs until their Arrowhead residence sold. The court valued that residence at $1.9 million, awarded wife one-half of the net proceeds, and ordered that the closing be effected within six months of listing.

The award to wife of maintenance in the amount of $7500 per month for approximately two years and $5000 per month for an additional three years thereafter coincided with the duration requested by wife for maintenance. We conclude that the findings were sufficient to support the award of decreasing maintenance in increments, even though the court did not identify a specific incident that would occur after two years. *See In re Marriage of Sim, supra* (no difference between limiting the duration of maintenance to

a specific term and awarding incremental decreases in maintenance before terminating it completely). Once the residence was sold, wife would have sufficient funds to meet her reasonable needs. Thus, it was to wife's benefit that the first decrease in maintenance did not occur until well after the foreseeable precipitating event.

Contrary to wife's contention, the court was not required to reserve jurisdiction over the issue of maintenance when, after sale of the residence and an additional period in which to reacclimate to working, wife would have sufficient means to satisfy her own needs. *See In re Marriage of Folwell, supra.*

Accordingly, we discern no abuse of discretion in the maintenance award.

### III.

Wife also asserts that the trial court erred and violated her constitutional right to unrestrained speech by permanently restraining her from publishing the contents of an allegedly embarrassing audiotape of a telephone conversation between husband and another person. However, wife did not raise this issue in the trial court, and thus, we decline to address it on appeal. *See Minto v. Lambert,* 870 P.2d 572 (Colo.App.1993).

### IV.

■ Wife next asserts that the trial court lacked the authority to order her not to amend tax returns on which husband had signed her name. We disagree.

■ The federal tax code provisions do not deprive the dissolution court of jurisdiction to enter orders as between the parties. *See Cohan v. Cohan,* 150 Colo. 249, 372 P.2d 149 (1962) (court may consider the effect of state and federal income taxes on its contemplated award in a dissolution of marriage action); *In re Marriage of Finer,* 920 P.2d 325 (Colo.App.1996). The court may apportion tax liabilities assessed on the parties' joint return in proportion to each party's earned income for the relevant tax year, even though collection efforts by the Internal Revenue Service would be joint and several. *In re Marriage of Tanous,* 730 P.2d 907 (Colo. App.1986).

Here, the record shows that, prior to 1998, husband routinely signed the tax returns for wife. As part of the permanent orders, husband was obligated to pay any taxes, penalties, interest, and expenses that might be incurred as the result of an audit of any joint tax returns filed during the marriage. He was also ordered to indemnify and hold wife harmless from any such tax liability. Thus, the trial court's ruling precluding wife from amending previously filed joint tax returns was within the court's discretion and consistent with the parties' prior practices and with the court's allocation of responsibility for future tax liabilities.

### V.

■ Wife also contends that the trial court abused its discretion in awarding husband the entire passive activity loss carry forward. We disagree.

The primary reference to this asset was made in closing arguments. The trial court found that the origin of the passive activity loss carry forward of $981,412 reported on the parties' 1998 tax return was not clear and that neither party had cited any authority concerning that tax entry. The court concluded that it would treat that asset as an economic circumstance to be dealt with in an equitable division of property, *see* § 14–10–113(1)(c), C.R.S.2002, and in consideration of maintenance and attorney fees.

Based on the sparsity of the evidence and argument on this issue, we find no error. *See In re Marriage of Zappanti,* 80 P.3d 889, 2003 WL 21403371 (Colo.App. No. 02CA0918, June 19, 2003)(it is the parties' duty to present the trial court with requisite data to value and distribute property, and failure to do so does not provide grounds for appeal); *cf. In re Marriage of Eisenhuth,* 976 P.2d 896 (Colo.App.1999)(in reaching equitable division of marital property, the court is required to consider the evidence before it). Furthermore, in the absence of evidence to the contrary, the distribution of this asset was consistent with the court's allocation of the marital tax liabilities.

## VI.

Last, wife asserts that the trial court erred in determining that the closing of the Arrowhead residence must occur within six months of listing, unless the parties agreed otherwise. We disagree.

The mechanism employed by the trial court for dividing the marital estate is a matter within the court's discretion, *In re Marriage of Wormell,* 697 P.2d 812 (Colo. App.1985), and the court has the discretion to impose conditions on the distribution of property. *In re Marriage of Garcia,* 638 P.2d 848 (Colo.App.1981).

Here, wife was allowed to continue to live in the residence, and husband was obligated to pay all carrying costs associated with it, such as utilities, maintenance, assessments, taxes, insurance, and related expenses pending sale. Such costs totaled approximately $1000 to $1200 per month. In its post-trial order, the court ordered that husband be reimbursed from the sales proceeds of the residence or the parties' loft.

Because husband was responsible for the majority of the liability, we conclude that the court's imposition of the condition to expedite the sale of the residence did not constitute an abuse of discretion. *See In re Marriage of Wormell, supra.*

The judgment is affirmed.

Judge TAUBMAN and Judge KAPELKE concur.