**The PEOPLE of the State of Colorado, In the Interest of M.A.G., Child-Appellee,**

**And Concerning the Adams County Department of Social Services, Appellant,**

**and**

**C.G., Father.**

**No. 86CA0095.**

Colorado Court of Appeals, Div. III.

Dec. 31, 1986.

Rebecca Parker, Asst. Co. Atty., Commerce City, for appellant.

Deborah Brown Kovac, Guardian Ad Litem, Denver.

---

VAN CISE, Judge.

In this delinquency proceeding, the Adams County Department of Social Services (ACDSS) appeals the trial court order changing the custody of the 16-year-old adjudicated delinquent child, M.A.G. (the child), from his father to ACDSS, directing his placement for a limited period in a private hospital facility, and requiring ACDSS to pay the cost of the placement. We affirm in part and reverse in part.

On November 14, 1985, the child was adjudicated as a delinquent, based on his having committed third degree assault on his father. At the time of the adjudication, the child had already been placed by his father in Raleigh Hills Hospital (Raleigh Hills), a private facility which has programs to treat substance abuse. All in attendance at this hearing, including the child, his parents, his guardian ad litem, a case worker from ACDSS, and representatives of the district attorney, the public defender, the probation department, and Raleigh Hills, felt it was in the best interests of the child that he continue in his placement at Raleigh Hills for a short period. The trial court granted probation for one year, put him in the custody of ACDSS, and continued his placement at Raleigh Hills.

Two weeks later, ACDSS entered a formal appearance in the case by filing a motion for a new hearing, arguing that the disposition did not comply with the Children's Code, § 19-1-101 et seq., C.R.S. (the Code). At a hearing on December 13, ACDSS recommended custody be returned to the father, and the father stated he was willing to assume the entire cost of the care at Raleigh Hills. However, ruling that ACDSS "can find a way to fund this," the trial court ordered placement to continue at Raleigh Hills to a maximum date of discharge of January 15, 1986, directed ACDSS to pay the costs of the placement at Raleigh Hills after the father's insurance coverage terminated (estimated as occurring on December 19), and provided that on discharge the child could return home.

I.

ACDSS contends that placement at Raleigh Hills was "placement out of the home" in violation of the Code because Raleigh Hills is a facility licensed by the department of health and not by the department of social services or by the department of institutions.

"Placement out of the home" is defined in § 19-1-103(21.5), C.R.S. (now in 1986 Repl. Vol. 8B) as:

"[P]lacement for twenty-four-hour residential care in any facility or center operated or licensed by the department of social services ... but the term does not include any placement of a child ... which is paid for totally by private moneys ... 'Placement out of the home' may be voluntary or court-ordered.' ..."

However, another section of the Code in effect at the time, § 19-3-113(1)(a), C.R.S., stated that: "The court may make any disposition, or combination of dispositions when appropriate, provided under section 19-3-112(1) ..." At the time of this action, § 19-3-112(1)(e)(I), C.R.S. (now codified as § 19-3-113(1)(k)(I), C.R.S. (1986 Repl. Vol. 8B)) provided:

"The court may order that the child be examined or treated by a ... psychiatrist or psychologist or that he receive other special care and may place the child in a hospital or other suitable facility for such purposes...."

It was this provision that the trial court utilized in placing the child at Raleigh Hills.

■ Here, the court was not making a "placement out of the home" "for twenty-four-hour residential care" as contemplated in § 19-1-103(21.5). It made a placement for "special care in a hospital" under § 19-3-113(1)(k)(I). This was authorized under the Code.

II.

■ Although we agree with ACDSS that the court's giving legal custody to ACDSS was questionable, we do not agree with its contention that when a child is in its custody, then it and it alone has the

authority to determine the child's placement. "It is within the exclusive jurisdiction of the court to determine the placement of a child adjudicated ... delinquent ... and [the department of social services] may not encroach on that authority placed with the court." *People In Interest of T.W.*, 642 P.2d 16 (Colo.App.1981).

### III.

■ We agree with ACDSS that the court erred when it ordered ACDSS to pay the entire cost of the child's treatment without any contribution from the father to the extent of his ability to pay.

After the child had been adjudicated a delinquent, the court held a dispositional hearing pursuant to § 19–3–109, C.R.S. The applicable Code provision, now codified as § 19–3–115(4)(d), C.R.S. (1986 Repl. Vol. 8B), states that: "[A] decree vesting legal custody ... or providing for placement of a child pursuant to ... section ... 19–3–109 ... shall be accompanied by an order of the court which obligates the parent of the child to pay a fee, based on the parent's ability to pay, to cover the costs of the guardian ad litem and of providing for residential care of the child." The trial court should have included this in its order.

The order is affirmed in all respects except as to the allocation of treatment costs. In that respect, the order is reversed and the cause is remanded with directions that the order be modified to include provisions for payment (or reimbursement to ACDSS) by the father to the extent of his ability to pay and for payment of the balance of the cost by ACDSS.

BABCOCK and METZGER, JJ., concur.