The PEOPLE of the State of Colorado, In the Interest of M.L.M., a Child, Upon the Petition of the Denver Department of Human Services, Petitioner–Appellant,

and

Concerning L.M. and M.O.M., Respondents–Appellees.

Nos. 03CA2390, 03CA2392.

Colorado Court of Appeals, Div. II.

Nov. 4, 2004.

Cole Finegan, Denver City Attorney, Suanne C. Craig, Assistant City Attorney, Denver, Colorado, for Petitioner–Appellant.

No Appearance for Respondents–Appellees.

ROTHENBERG, J.

In this action against a juvenile's parents for reimbursement of foster care fees for a juvenile adjudicated a delinquent, the Denver Department of Human Services (DDHS) appeals the juvenile court's order affirming the magistrate's denial of fees. We reverse and remand with directions.

### I.

This action was brought by DDHS pursuant to § 19–1–115(4)(d), C.R.S.2004, for the reimbursement of foster care fees after the juvenile in this case was adjudicated delinquent and placed in a residential treatment center. His parents were served with an administrative notice of financial responsibility to appear for a negotiation conference pursuant to § 26–13.5–101, et seq., C.R.S. 2004. The parties could not agree on the amount of reimbursement for the cost of care, and a request for a hearing was filed with the court.

Following a hearing, the magistrate denied DDHS's request for reimbursement, concluding that (1) § 19–2–114, C.R.S.2004, was the applicable statute; and (2) DDHS had not complied with its requirement that information concerning the juvenile's estate, the parents' estate, restitution payments, and the juvenile's support obligations be made available to the magistrate before foster care fees could be awarded to DDHS.

On review, the juvenile court affirmed the magistrate's order. Neither the juvenile nor his parents have participated in this appeal.

### II.

■ At issue in this appeal is whether § 19–2–114 or § 19–1–115(4)(d) applies where, as here, a juvenile has been adjudicated delinquent and has been placed in residential or foster care, and DDHS seeks reimbursement from the juvenile's parents for a portion of the cost of that care. DDHS contends the magistrate and the juvenile court erred in applying § 19–2–114, rather than § 19–1–115(4)(d), to determine the amount of reimbursement owed by the parents. We conclude the statutes can be harmonized and both should have been considered.

■ Statutory interpretation is a question of law that is reviewed de novo. *Colo. State Bd. of Accountancy v. Paroske,* 39 P.3d 1283 (Colo.App.2001).

Our responsibility when interpreting a statute is to determine the General Assembly's intent. We first look at the language of the statute and give it its ordinary and common meaning. We construe statutes as a whole, giving effect to every word. *In re Marriage of Mugge,* 66 P.3d 207 (Colo.App. 2003).

■ When statutes potentially conflict, a court should, where possible, adopt a construction that would harmonize provisions rather than create an inconsistency or conflict in the statutory scheme. *In re Marriage of Bisque,* 31 P.3d 175 (Colo.App.2001).

■ If statutory language is ambiguous or if the statute appears to conflict with other provisions, we may look to extrinsic factors, including the end to be achieved by the statute and its legislative history. *Grant v. People,* 48 P.3d 543 (Colo.2002).

Section 19–1–115(4)(d) provides in relevant part:

A decree vesting legal custody of a child or providing for placement of a child with an agency in which public moneys are expended *shall be accompanied by an order of the court which obligates the parent of the child to pay a fee, based on the parent's ability to pay,* to cover the costs of the guardian ad litem and of providing for residential care of the child.

(Emphasis added)

Section 19–2–114, C.R.S.2004, specifically references § 19–1–115(4)(d) and provides:

*Notwithstanding the provisions of section 19–1–115(4)(d), where a juvenile is sentenced to a placement out of the home* or is granted probation as a result of an adjudication, deferral of adjudication, or direct filing in or transfer to district court, *the court may order the juvenile or the juvenile's parent* to make such payments toward the cost of care as are appropriate under the circumstances. In setting the amount of such payments, the court shall take into consideration and make allowances for any restitution ordered to the victim or victims of a crime . . . and for the maintenance and support of the juvenile's spouse, dependent children, and other persons having a legal right to support and maintenance out of the estate of the juvenile, or any persons having a legal right to support and maintenance out of the estate

of the juvenile's parent. The court shall also consider the financial needs of the juvenile for the six-month period immediately following the juvenile's release, for the purpose of allowing said juvenile to seek employment.

(Emphasis added)

Because both statutes address the cost of care of the juvenile in this case, we also may look to the legislative history in our attempt to construe and harmonize the statutes. *See General Electric Co. v. Niemet,* 866 P.2d 1361 (Colo.1994)(where a statute is unclear and the language lends itself to alternative constructions, it is appropriate to look to the pertinent legislative history in determining which construction is in accordance with the objective sought by the legislature); *Cooley v. Big Horn Harvestore,* 813 P.2d 736 (Colo. 1991)(if possible, courts must seek to harmonize apparently contrasting statutory provisions); *People v. James,* 178 Colo. 401, 497 P.2d 1256 (1972) (if two statutory provisions appear to be in conflict, the reviewing court must attempt to construe the statutes in a manner that will avoid the conflict).

### A.

Section 19–1–115(4)(d) is triggered by the placement of a child by a public agency. It imposes a mandatory obligation upon parents to contribute to the cost of their child's residential placement, which is computed in accordance with their ability to pay. *People in Interest of N.D.S.,* 5 P.3d 382 (Colo.App. 2000); *People in Interest of M.A.G.,* 732 P.2d 649 (Colo.App.1986).

The original version of § 19–1–115(4)(d) was added to the statutory scheme in 1979 and was cited in two early cases in which parents were ordered to reimburse foster care fees. *See People in Interest of M.A.G., supra; People in Interest of A.L.B.,* 683 P.2d 813 (Colo.App.1984). However, even after § 19–2–114 was enacted in 1994, every opinion we have found addressing the issue of the reimbursement of foster care fees by a juvenile's parents has relied on § 19–1–115(4)(d), rather than on § 19–2–114. *See People in Interest of N.D.S., supra; People in Interest of S.M.S.,* 907 P.2d 739 (Colo.App.1995); *see also M.S. v. People,* 812 P.2d 632 (Colo.1991).

### B.

Section 19–2–114 contemplates a delinquency proceeding because it requires that the juvenile be *sentenced* to a placement out of the home or be granted probation "as a result of an adjudication, deferral of adjudication, or direct filing in or transfer to district court." It permits the court to order *either* the parents or the juvenile to pay for the cost of care, but requires that the parents be parties to the delinquency proceedings before the court "may order" payment. *See* § 19–2–113(2)(b)(V), C.R.S.2004; *People in Interest of N.D.S., supra* (concluding the administrative procedures outlined in § 26–13.5–101, et seq., C.R.S.2004, which include notice and an opportunity to be heard, satisfy the parents' right to due process).

The legislative history of § 19–2–114 indicates the General Assembly intended that parents be held accountable for the actions of their children and that the court also consider compensation of the victims of juvenile offenders. *See* Hearings on S.B. 143 before the Senate Judiciary Committee, 59th General Assembly, 2d Session (Feb. 9, 1994); Hearings on S.B. 143 before the House Judiciary Committee, 59th General Assembly, 2d Session (Mar. 28 and 31, 1994).

Section 19–2–114 states that payments toward the cost of care are to be made "as are appropriate under the circumstances," and lists several factors for the court to consider in setting the amount of payment. If the court orders payment under § 19–2–114, it must make a number of allowances in setting the amount of payment by the juvenile or the juvenile's parent. Contrary to the rulings of the magistrate and the juvenile court in this case, § 19–2–114(3) expressly places the burden of providing financial information on the juvenile and his parents. Thus, DDHS was not required to present information regarding the juvenile's and his parents' estates to calculate the amount of payment under § 19–2–114.

Here, the juvenile was adjudicated delinquent for refusing to attend school and placed in a residential care facility. Thus,

the broad language of § 19–1–115(4)(d) applies because he has been placed with an agency in which public monies have been expended and DDHS seeks reimbursement solely from his parents for the cost of that care. Their obligation is mandatory.

However, § 19–2–114 gives the court flexibility in allocating the cost of the juvenile's care. If appropriate, the court may order that the juvenile also make reasonable payments, after considering the factors enumerated in the statute and making "allowances for any restitution ordered to the victim or victims of a crime."

We perceive no reason why the statutes cannot be harmonized and conclude the magistrate erred in only considering § 19–2–114. The magistrate also erred in placing an incorrect burden on DDHS, and ruling that DDHS was required to present information regarding the juvenile's and his parents' estates to calculate the amount of payment under § 19–2–114.

The order affirming the magistrate is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge NIETO and Judge LOEB concur.