Michael COMBS, Plaintiff–Appellant,

v.

Brenda TIBBITTS, Defendant–Appellee.

No. 05CA0937.

Colorado Court of Appeals,
Div. I.

Oct. 5, 2006.

Peterson Dymond Reagor, LLP, Michael W. Reagor, Greenwood Village, Colorado, for Plaintiff–Appellant.

Frank Woodrow, Montrose, Colorado, for Defendant–Appellee.

Opinion by Judge TERRY.

Plaintiff, Michael Combs, appeals from the trial court's judgment finding that the written contract he entered into with defendant, Brenda Tibbitts, is an enforceable separation agreement. We vacate the judgment and remand for further proceedings.

The following facts were stipulated to by the parties. Plaintiff legally married a woman other than defendant in 1972, and remained married to her at all relevant times. From 1978 until 1999, he cohabited with defendant in a relationship the parties referred to as a "religious" or "celestial" marriage. Plaintiff and defendant had five children together, two of whom were still minors at the time of these proceedings.

In addition to their domestic relationship, the parties were also involved in a business that sold vitamins and herbal extracts. Plaintiff testified that he was sole proprietor of that business, and that defendant worked there as an employee.

When the parties terminated their domestic relationship, plaintiff drafted an agreement, entitled "Domestic Agreement and Writ of Divorce." It states that both parties agree to dissolve "their relationship as man and wife," and provides that plaintiff "will pay [defendant] the sum of $4,000.00 each month until [plaintiff] reaches the age of 65 years old or dies, or [until] a total of $868,000.00" has been paid, whichever occurs first. The agreement indicates that the sums to be paid "will be construed as alimony and child support." The agreement requires plaintiff to pay defendant a lump sum of $100,000, and to pay all expenses incurred for the couple's children for "emergencies and treatments encountered in accidents." Other provisions, not pertinent here, address the parties' agreement concerning plaintiff's contact with the children. The document states that it is the final agreement and that "[n]othing else is agreed to or implied."

After entering into the agreement, plaintiff paid defendant $100,000, which she applied toward the purchase of a residence for herself and the parties' children. Plaintiff also paid defendant $4,000 per month from November 1999 until February 2004, for an approximate total of $160,000.

Plaintiff commenced this action seeking a declaratory judgment regarding the rights and obligations of the parties under the agreement; return of the amounts he had paid to defendant; and partition and sale of the real property defendant purchased using the funds paid. He alleged in the complaint that he was induced to enter into the agreement based on his mistaken belief that he and defendant were married, and that defendant fraudulently concealed from him the fact that the parties were not legally married. (These allegations were directly contradicted by his trial testimony, which indicated he always knew that he was not legally married to defendant.) He further alleged that defendant induced him to enter into the agreement by fraudulently concealing from him the fact that he had no legal obligation to pay her any amount.

In her answer, defendant stated that the parties' agreement was not based upon marriage. She claimed that both parties knew plaintiff had a legal wife and asserted that the payments contemplated under the agreement were intended as child support and severance pay related to the services she had contributed to plaintiff's business. Defendant asserted counterclaims for unjust enrichment based on plaintiff's alleged failure to pay the promised sums; entry of judgment for the delinquent payments, in the event the agreement were found valid; and entry of judgment for child support, in the event the agreement were found to be invalid. Plaintiff asserted numerous defenses to the counterclaims.

Prior to trial, the parties agreed to a stipulation, acknowledging that each of them had a child support obligation for the children resulting from their relationship. In the stipulation, the parties agreed that the trial court had jurisdiction to determine the parties' child support obligations; each would provide financial disclosures to the other; following such disclosure, the parties would "cooperate in good faith in resolving any disputes regarding child support obligations"; and in the event the parties were unable to resolve child support issues, either party could set the matter for hearing before the court to determine child support obligations. The trial court entered the stipulation as an order of the court.

Following a bench trial, the court ruled that the parties were putative spouses pursuant to § 14–2–111, C.R.S.2006. It based its ruling on plaintiff's admission that he entered into the agreement because of his mistaken religious belief that he was married to defendant. The court further found that plaintiff's belief that he was married to defendant was evidenced by both the title of the agreement and his allegation in the complaint that he believed he was married to defendant. The court ordered that the agreement was enforceable as a separation agreement between the parties and concluded that plaintiff had failed to make the required payments to defendant beginning in March 2004 for a total arrearage of $48,000. The court entered judgment for defendant in that amount, and awarded prejudgment interest in the amount of $2,079.30 and costs of $620.

The court went on to find that both parties had child support obligations for the children issuing from their relationship, and the court made the following order with respect to child support:

> [A]ny child support obligation owed by Plaintiff to Defendant or the issue from their relationship is included within the amounts owed under the Agreement and ... the parties may agree to apportion child support within the payment obligation owed by Plaintiff under the Agreement. However, Defendant shall not be entitled to an award of any further amounts from Plaintiff, other than amounts owed under the Agreement, for child support.

The order did not mention whether the amounts payable under the agreement met the child support guidelines set forth in § 14–10–115, C.R.S.2006.

The trial court dismissed the parties' remaining claims with prejudice, except for defendant's counterclaim requesting money damages for a share of plaintiff's business, which the court stated was subject to litigation in a separate lawsuit between the parties pending in another judicial district. As we read the trial court's opinion, it granted C.R.C.P. 54(b) certification *sub silentio* for consideration of the issues raised in this appeal, and neither party objects to this court's consideration of these issues.

### I. Putative Marriage Statute

■ Plaintiff first contends that the trial court erred in determining that defendant was his putative spouse within the meaning of the putative marriage statute. We agree.

Section 14–2–110(1)(a), C.R.S.2006, states that a marriage entered into prior to the dissolution of an earlier marriage of one of the parties is prohibited. However, § 14–2–111 provides that any person who has cohabited with another in the good faith belief that he was married to that person is a putative spouse until knowledge of the fact that he is not legally married terminates his status and prevents acquisition of further rights. A putative spouse acquires the rights conferred upon a legal spouse, including the right to maintenance, whether or not the marriage is prohibited under § 14–2–110, declared invalid, or otherwise terminated by court action. Section 14–2–111.

Here, it is undisputed that, at all times, both parties knew that plaintiff was legally married to another person throughout the period of his cohabitation with defendant. Plaintiff testified, "We've never ever ... believed that we were legally married," and defendant testified to the same effect. Therefore, there is no record support for the trial court finding that there was a putative marriage under § 14–2–111. Neither plaintiff nor defendant had a good faith belief that the two were validly married, and neither qualifies as a putative spouse. *See People v. McGuire*, 751 P.2d 1011 (Colo.App.1987) (knowledge that one is married to another person negates good faith belief required to obtain benefit of putative spouse statute).

We conclude that the court erred in ruling that the parties were putative spouses, and in relying on a belief held by plaintiff that he had entered into a "religious" or "celestial" marriage with defendant. As stated in *People v. McGuire, supra,* "[s]ection 14–2–111 was enacted to protect innocent participants in meretricious relationships and the children of those relationships," not for "the purpose of affording protection to the perpetrator of an invalid marriage." *People v. McGuire, supra,* 751 P.2d at 1012.

### II. Enforceability of Agreement as Separation Agreement and Right to Maintenance

■ Plaintiff further contends that the trial court erred when it enforced the parties' agreement as a separation agreement. We agree.

Section 14–10–112, C.R.S.2006, governing separation agreements, applies only to settlement of disputes between "parties to a marriage attendant upon their separation or the dissolution of their marriage." Section 14–10–112(1), C.R.S.2006; *see also In re Marriage of Lafaye,* 89 P.3d 455 (Colo.App.2003) (an agreement is attendant upon separation or dissolution if it is executed under circumstances accompanying, connected with, or surrounding a contemplated dissolution or

separation). By its terms, the statute has no application to the parties here, who were always aware that they were not legally married. The application of this statute to putative spouses is not before us, and we decline to address that issue.

■ The trial court's order awarding $48,000 to defendant under the agreement, of which an unspecified portion was for child support, in essence constituted an award of maintenance to defendant for whatever portion of that sum could not be attributed to child support. Because the right to maintenance can only be claimed by a participant in a valid marital relationship or by a putative spouse, the parties' agreement creates no enforceable basis for defendant to claim such support. *See* § 14–2–111 (granting the right to seek maintenance upon termination of status as putative spouse); § 14–10–114, C.R.S. 2006 (granting the right to seek maintenance in a proceeding for dissolution of marriage or legal separation); *Taylor v. Taylor*, 7 Colo. App. 549, 44 P. 675 (1896) (alimony cannot be granted where no marital relation exists at time of application for alimony). Mere cohabitation does not trigger any marital rights. *Salzman v. Bachrach*, 996 P.2d 1263, 1269 (Colo.2000). *See also People v. Maes*, 43 Colo.App. 365, 609 P.2d 1105 (1979))(no valid common law marriage arises where one party has undissolved existing marriage).

Because the parties were not legally married and the putative spouse statute does not apply, the trial court erred when it characterized the parties' agreement as a separation agreement and awarded maintenance to defendant. *See* §§ 14–10–112, 14–10–114.

### III. Child Support

■ Plaintiff in this appeal seeks review of the trial court's order. Because defendant's counterclaim sought an award of child support, and the trial court's order treated an unspecified portion of the payments under the parties' agreement as child support, we review whether the court's award complied with Colorado's child support statute. We conclude that, on remand, the trial court must review the adequacy of the child support awarded.

Section 14–10–115(3)(a), C.R.S.2006, provides that in any action to establish or modify child support, the child support guidelines set forth in that section shall be used as a rebuttable presumption for the establishment or modification of the amount of child support, although courts may deviate from the guidelines where its application would be inequitable, unjust, or inappropriate. Any such deviation shall be accompanied by written or oral findings by the court specifying the reasons for the deviation and the presumed amount under the guideline without a deviation. Section 14–10–115(3)(a).

Although the child support statute refers to support for any "child of the marriage," § 14–10–115(1), C.R.S.2006, the statute also applies whenever paternity has been established. *See* § 19–4–129, C.R.S.2006. Here, there is no question that plaintiff is the father of the children in question, and that he owes a duty of support. *See In re Marriage of Price*, 727 P.2d 1073 (Colo.1986) (duty of child support is independent of entry of dissolution decree); *see also Scheer v. Dist. Court*, 147 Colo. 265, 363 P.2d 1059 (1961) (there may be a remedy for child support apart from a divorce action).

Compliance with the statute requires the trial court to consider factors including the financial resources of the child and of both parents, as well as the educational needs and physical and emotional condition of the child, to determine the sufficiency of the child support payment. Section 14–10–115(1).

The trial court's order indicates that the court accepted, without further inquiry, the amounts set forth in the parties' agreement as being attributable, at least in part, to child support. The court did not review those amounts to determine whether they complied with the child support guideline set forth in § 14–10–115.

■ The parties cannot, by contract, escape their responsibilities to provide adequate child support. Any agreement the parties make with respect to child support is not binding on the court, and the parties cannot preclude or limit by agreement subsequent court modification of terms concerning child support. *In re Marriage of Chalat*, 112

P.3d 47 (Colo.2005); *Wright v. Wright,* 182 Colo. 425, 514 P.2d 73 (1973).

The law and policy of Colorado are that the needs of the children are of paramount importance. *Chalat, supra,* 112 P.3d at 53; *In re Marriage of Miller,* 790 P.2d 890, 892 (Colo.App.1990). In reviewing provisions for child support, a court must make specific findings as to whether the child support agreed to by the parties complies with the child support statute. *See In re Marriage of Marshall,* 781 P.2d 177 (Colo.App.1989) (if trial court deviates from guidelines, it is required to make findings that application of the guidelines would be inequitable and to specify the reasons for the deviation).

We conclude that the trial court erred when it did not make such findings. Therefore, on remand, the trial court must make specific findings and determine the appropriate amount of child support to be paid in accordance with § 14-10-115.

## V. Enforceability of Agreement Under Basic Contract Principles

■ Plaintiff finally contends that the trial court erred in failing to consider whether the agreement is valid and enforceable on other grounds. He argues that the case must be remanded for further proceedings. We agree.

■ Courts will not intervene to enforce, revoke, or rescind agreements between cohabiting parties where the sole consideration is based on past, present, or future sexual relations. *Houlton v. Prosser,* 118 Colo. 304, 194 P.2d 911 (1948); *Baker v. Couch,* 74 Colo. 380, 221 P. 1089 (1923). Our supreme court has held that nonmarried, cohabiting couples may legally contract with each other so long as sexual relations are merely incidental to the agreement, and enforcement of such agreements may be sought under either law or equity. *Salzman, supra.*

No appellate court of this state has construed an agreement governing the termination of a relationship such as the one presented here, and we have found no cases on point within the United States. *Cf. Whitney v. Whitney,* 194 Okla. 361, 151 P.2d 583 (1944) (unwitting party to bigamous marriage may maintain suit against other party for fraudulent inducement into marriage, notwithstanding written contract for property division previously entered into by parties, which plaintiff alleged was void).

We conclude that, aside from the sufficiency of the parties' agreement pertaining to child support, as discussed above, general contract principles govern the analysis of the remaining provisions of the agreement. *See In re Marriage of Lafaye, supra,* 89 P.3d at 459 (general contract principles apply to agreements that are not governed by the Uniform Dissolution of Marriage Act).

We have already concluded that, because the parties were not legally married, payments denominated for "alimony" (by which the parties apparently meant "maintenance") are unenforceable. Nevertheless, defendant testified at trial that, to the extent the payments made to her were for anything other than child support, they were intended as severance pay for her work in plaintiff's business. Furthermore, at oral argument, counsel for defendant suggested that the payments might be construed as compensation related to the dissolution of a business relationship.

On remand, the trial court must make findings as to whether, under general contract law principles, the parties' contract is enforceable for any lawful purpose. Included within that review, the court must determine whether the prerequisites for formation of a contract have been met, and must specifically rule on the issues of consideration and meeting of the minds, which have been raised by plaintiff.

If the trial court determines that the agreement constitutes a valid contract, it must then determine whether there has been a breach of the contract, and if so, whether such breach was material.

The judgment is vacated, and the case is remanded for further proceedings as directed.

Judge MÁRQUEZ and Judge GRAHAM concur.