**In re the MARRIAGE OF Scott WELLS, Appellant,**

**and**

**Carrie Wells, Appellee.**

**No. 10CA0249.**

Colorado Court of Appeals, Div. VII.

March 17, 2011.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2010.

John B. Kusic, Denver, Colorado, for Appellant.

Carolyn Pelloux, Denver, Colorado, for Appellee.

Opinion by Judge BOORAS.

In this post-dissolution of marriage matter between Scott Wells (husband) and Carrie Wells (wife), husband appeals from the order modifying his child support obligation for the parties' two children, and ordering him to pay extraordinary expenses under section 14–10–115(11)(a)(I), C.R.S.2010, and attorney fees. We affirm the provision of the order awarding extraordinary expenses to wife relating to the parties' teenaged son's car and awarding attorney fees based on husband's untimely disclosures. We reverse the provisions concerning child support and remand for further proceedings.

## I. Child Support

Husband contends that the trial court abused its discretion by calculating child support separately for each of the parties' two children and by ordering him to pay extraordinary expenses relating to the parties' teenaged son's car.

■■■■ An appellate court reviews child support orders for abuse of discretion. *In re Marriage of Atencio,* 47 P.3d 718, 720 (Colo. App.2002). We review de novo, however, whether the trial court applied the correct legal standard when calculating child support. *See id.*

### A. Multiple Child Support Worksheets

In the case of a shared parenting time arrangement, the basic child support obligation is apportioned according to the number of overnight visits exercised by each parent. *See* § 14–10–115(8)(b), C.R.S.2010 ("Each parent's share of the adjusted basic child support obligation shall then be multiplied by the percentage of time the children spend with the other parent . . . ."); *see also In re Marriage of Emerson,* 77 P.3d 923, 926 (Colo.App.2003); *In re Marriage of Quam,* 813 P.2d 833, 835 (Colo.App.1991).

The statute does not explicitly address, however, a parenting time arrangement that involves different overnight visits for different children in the same family. *See Quam,* 813 P.2d at 835. In that situation, child support should be calculated according to the formula set forth in *Quam,* where the father had a different schedule of overnight visits with each of the parties' three children. *See id.* The division held that when calculating child support

the amount of the father's overnight visitation should be apportioned so that father is not credited with a full overnight when he actually has less than all three children overnight. Instead, the father should be credited for one-third of an overnight each time he has one of the children with him.... [W]e believe that this approach best achieves the legislative intent of apportioning the child support obligation in proportion to the amount of time spent by the children in each parent's custody.

*Id.*

■ Pursuant to *Quam*, child support would be calculated for a parent, like husband here, who had overnight visits with only one of two children by crediting the parent for one-half of an overnight for each visit with the one child.

Child support, as calculated pursuant to the guidelines and schedule in section 14–10–115(7), C.R.S.2010, establishes a rebuttable presumption of the amount owed. § 14–10–115(8)(e), C.R.S.2010; *Combs v. Tibbitts*, 148 P.3d 430, 434 (Colo.App.2006). A court may deviate from the guidelines and schedule if its application would be inequitable, unjust, or inappropriate, but such deviation must be accompanied by findings specifying the reasons for deviation. § 14–10–115(8)(e); *see also Combs*, 148 P.3d at 434.

Here, the trial court ordered that, "given the different circumstances of the children," the court would deviate from the guidelines by using a multiple worksheet method to calculate support. The court then added the amounts from the two worksheets together and deviated again downward from that amount. The court made no findings, however, as to the reason for the downward deviation.

We agree with husband that by beginning the calculation using two worksheets, the court inappropriately treated the children, for child support purposes, as if each was an only child. That approach is contrary to the guidelines and schedule, which provide for incremental increases in support for each additional child in a family. *See* § 14–10–115(7)(b), C.R.S.2010; *see also In re Marriage of Blanford*, 937 N.E.2d 356, 361 (Ind. Ct.App.2010) (holding that when parent had

overnight visits with only one of two children, use of separate worksheets treated each child as an only child under the guidelines and resulted in an inflated child support obligation); *Soulsby v. Soulsby*, 222 W.Va. 236, 664 S.E.2d 121, 131 (2008) ("[T]he incremental increase apparent in the statutory guidelines cannot be incorporated when each child's support obligation is calculated under a different worksheet.").

We further agree with husband that to the extent the trial court intended to deviate from the guidelines and schedule pursuant to section 14–10–115(8)(e), the court did not enter sufficient findings in support. Although the court indicated that it would split the difference between the amount resulting from two worksheets and the amount resulting from one worksheet, the court did not explain why it was appropriate to calculate support in that manner, nor did the court address the calculation method from *Quam*. Accordingly, on remand the trial court should recalculate child support using one worksheet and crediting husband's overnight visits according to the formula set forth in *Quam*. If the court then finds that the resulting child support amount is inequitable, unjust, or inappropriate, it should enter findings explaining its reasons for deviation.

We are not persuaded otherwise by wife's unsupported contention that it is "the general practice of the [c]ourt system" to use multiple child support worksheets when there are multiple children in a family. *See* § 14–10–115(7)(b) (providing instead for incrementally increasing child support amounts for each additional child in the same family). We also reject wife's argument that the provisions of section 14–10–115(8)(c)(I), C.R.S. 2010, concerning split physical care, sanction the trial court's multiple worksheet method. This provision applies to the situation where primary residential care of multiple children is split between the parents, and not to the situation here where wife has primary care of both children but only one child has overnight visits with husband. *See Quam*, 813 P.2d at 835 (contrasting split *visitation* with split *custody* ); *see also Soulsby*, 664 S.E.2d at 131 (clarifying that, where the mother has primary care of both children but only one

child has overnight visits with the father, statutory provisions addressing split physical care do not govern). We conclude that in this situation, child support should be calculated according to the formula set forth in *Quam* unless sufficient findings are made to justify deviating from that formula.

### B. Extraordinary Expenses

■ Husband contends that the trial court abused its discretion by awarding a portion of the purchase price and repairs for the parties' teenaged son's car as a reasonable and necessary cost of attending school. We do not reverse the trial court's award.

The trial court has discretion to order that the reasonable and necessary costs of a child's attendance at a special or private school be divided between the parents in proportion to their income. *See* § 14–10–115(11)(a)(I); *In re Marriage of West*, 94 P.3d 1248, 1252 (Colo.App.2004). "The addition of extraordinary expenses to a parent's basic child support obligation must be supported by the court's findings and evidence in the record." *West*, 94 P.3d at 1252.

Here, wife testified that, after being expelled from his regular high school, the child needed a car to get to and from the school he was attending because the school district did not provide bus service to that school, public transportation was unavailable, and she was unable to transport him to school given the demands of her work schedule. She also admitted that the child did not have a driver's license because of a DUI conviction. Husband testified that he felt that the child should no longer have a car because he had been involved in a drive-by shooting with a car husband had provided for him earlier, resulting in the impoundment of that car.

The trial court found that the child was attending a school where no transportation was available, and therefore, it was appropriate to allocate to husband a proportionate share of the costs that wife sought relating to the child's car.

It is troubling that the court awarded expenses for a car that the child could not legally drive in the absence of any testimony establishing that some other person could use the car to drive the child to school during the time the child's driver's license was revoked. However, on this record, we do not reach the issue. Husband did not argue to the trial court that the expense was unreasonable because the child was unable to legally drive. Instead, husband's attorney argued that husband should not be required to provide another car in light of the child's criminal conduct that led to the impoundment of his previous car:

> I do not think the Court has authority legally, or even in, as a court of equity, to force [husband] to pay for the child's legal defense, nor does the Court have the authority to pay for his getting a car after the father had given him a car and the car got impounded because the kid was doing a drive-by shooting. A parent whether you like it or [not], can, at some point, say "enough."
>
> . . . .
>
> [N]or do I think that having him pay for the child's car is appropriate in light of the conduct. The father had provided a car. It gets impounded for the commission of a felony. I don't think the father then says, "Oh, by the way, I'm going to give you another car. I'm going to participate in you[r] acquiring one."

Simply that the child had earlier engaged in criminal conduct with a car is not sufficient to undermine the trial court's finding that the child needed a car for transportation to school. Because husband did not argue in the trial court that the child's inability to legally drive should be a basis for rejecting the educational expense as unreasonable, we decline to address the argument on appeal. *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 n. 5 (Colo.1992) ("Arguments never presented to, considered or ruled upon by a trial court may not be raised for the first time on appeal."); *O'Connell v. Biomet, Inc.*, 250 P.3d 1278 (Colo.App. 2010) (declining to address argument on appeal that failure to provide warnings about the configuration of a medical device rendered the product defective after arguments in the trial court focused on warnings about the type of incision used).

## II. Attorney Fees

■ Husband further contends that the trial court erred by awarding wife attorney fees as a sanction for his failure to comply with disclosure requirements. We disagree.

■ "Considerable discretion is vested in the trial court to determine whether noncompliance with mandatory pretrial procedures justifies the imposition of sanctions against the noncomplying party." *People v. Milton,* 732 P.2d 1199, 1207 (Colo.1987); *see also Emerson,* 77 P.3d at 927 ("[A] trial court has broad discretion to order sanctions and to determine the nature of such sanctions for a party's failure to comply with discovery."). Thus, absent an abuse of discretion, we will not disturb the trial court's decision in such matters. *See Milton,* 732 P.2d at 1207.

Here, wife sought fees pursuant to C.R.C.P. 16.2(j), contending that husband failed to timely comply with disclosure requirements, which caused her to incur attorney fees and expenses. The trial court granted her motion. Husband argues that he adequately complied with wife's discovery requests, that wife's attorney failed to confer, as required by C.R.C.P. 121 § 1–12(5), before filing her motion for fees, and that the court granted the motion without giving him an opportunity to respond.

Because husband failed to raise these arguments in the trial court, however, we do not address them here. *See Christensen v. Hoover,* 643 P.2d 525, 531 (Colo.1982) ("Defenses and objections not presented at trial are deemed waived and cannot be raised for the first time on appeal."); *see also Atencio,* 47 P.3d at 722. We note that although wife's fee request was granted several days before the hearing, the request was raised again at the hearing, and husband did not contend there that he was not given an opportunity to respond or that wife had failed to confer, nor did he attempt to offer any response. Accordingly, because the trial court had no opportunity to rule on husband's contentions, we do not address them on appeal. *See Atencio,* 47 P.3d at 722.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

## III. Appellate Fees

■ Wife requests her attorney fees incurred on appeal. Appellate attorney fees are awardable under C.A.R. 39.5 only if the requesting party states a legal basis for recovery. *In re Marriage of Dunkle,* 194 P.3d 462, 467 (Colo.App.2008). Because wife states no legal basis here, we deny her fee request. *See id.*

The portion of the order calculating child support is reversed and the case is remanded as provided herein. In all other respects, the order is affirmed.

Judge TERRY and Judge STERNBERG * concur.