20CA1730 Marriage of Vogl 10-21-2021 COLORADO COURT OF APPEALS Court of Appeals No. 20CA1730 Jefferson County District Court No. 15DR270 Honorable Christie A. Bachmeyer, Judge In re the Marriage of Nicole Vogl, Appellee and Cross-Appellant, and Michael Vogl, Appellant and Cross-Appellee. ORDER AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED WITH DIRECTIONS Division II Opinion by JUDGE YUN Román and Berger, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced October 21, 2021 Samuel J. Stoorman & Associates, P.C., Samuel J. Stoorman, Jeremy D. Monckton, William A. Haeberle, Denver, Colorado, for Appellee and Cross-Appellant LeRoux Law LLC, L. Paul LeRoux II, Westminster, Colorado, for Appellant and Cross-Appellee 
1 ¶ 1 In this post-dissolution of marriage proceeding involving Michael Vogl (father) and Nicole Vogl (mother), father appeals and mother cross-appeals from a district court’s order regarding attorney fees, school choice, and child support. We affirm the order in part, reverse it in part, and remand for further proceedings. I. Relevant Facts ¶ 2 The parties’ marriage ended in 2015. The district court approved their parenting plan for their then-eight-year-old child and incorporated it into the decree. Under the plan, they agreed to (1) follow a parenting time schedule where mother was the child’s primary residential parent; (2) share joint decision-making responsibility on all major issues, including education; and (3) forgo any child support. ¶ 3 In 2018, father moved to modify parenting time, decision-making responsibility, and child support. About a year later, father’s counsel was substituted by his present counsel, who agreed to represent him at a reduced rate. According to their arrangement, father’s new counsel capped his fees at approximately $14,000. 
2 ¶ 4 In August 2020, the district court held an evidentiary hearing on father’s modification requests. In its oral findings and conclusions of law, later adopted in its written ruling, the court  maintained the current parenting time schedule;  declined to decide whether the child should continue with private education through the first year of high school (academic year 2020-2021);  determined that father’s child support obligation was de minimus and ordered that no support be entered;  found that father was receiving monthly income in the amount of $12,770, “was taking advantage” of the discounted legal services, and had “negotiated a good deal” with his counsel at $14,000, especially given that “this [case] ha[d] been . . . highly litigated . . . for two years”;  further found that mother’s monthly income was $16,260; and  directed father to pay a portion of mother’s attorney fees in the amount of $30,000 under section 14-10-119, C.R.S. 2020. 
3 See Friends of Denver Parks, Inc. v. City & Cnty. of Denver, 2013 COA 177, ¶¶ 34-37 (district court’s oral findings may supplement its written order). ¶ 5 Father’s appeal and mother’s cross-appeal followed. II. Father’s Appeal A. Financial Resources Under Section 14-10-119 ¶ 6 Father asserts that the district court erred in its determination of his financial resources under section 14-10-119 because it considered his receipt of discounted legal services. Put simply, he argues that his receipt of discounted legal services is not a “financial resource” within the meaning of section 14-10-119. We are not persuaded. ¶ 7 The award of attorney fees is authorized pursuant to section 14-10-119, which provides in pertinent part: The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for [the other party’s] attorney’s fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. Id. (emphasis added); see In re Marriage of Aragon, 2019 COA 76, ¶ 8. 
4 ¶ 8 Our supreme court interpreted that provision broadly, using “economic circumstances” instead of “financial resources.” See In re Marriage of Aldrich, 945 P.2d 1370, 1377 (Colo. 1997). It added that in evaluating the “relative financial status of each party,” the district court must consider their “relative incomes, assets, and liabilities.” Id. at 1378. ¶ 9 We first reject father’s restricted definition of “financial resources” because the statute contains no exclusion for pro bono or discounted legal services. Consistent with the supreme court’s broad interpretation, we will not read an exclusion into the statute where no exclusion exists. See id.; see also In re Marriage of Blaine, 2021 CO 13, ¶ 21 (“We do not add words to a statute . . . [w]e only go where the statute takes us.”) (citations omitted). ¶ 10 Further, the receipt of legal services at a reduced rate is an asset in the sense that a party receives a financial or economic benefit, which frees up money for other uses. See Aldrich, 945 P.2d at 1378. In other words, the receipt of discounted legal services increased father’s other financial resources. And the court can consider discounted legal services in the parties’ overall economic circumstances when determining attorney fees under section 
5 14-10-119. See id. at 1377; see also In re Marriage of Davis, 252 P.3d 530, 538 (Colo. App. 2011) (the fact that the wife’s living expenses were being paid by her current husband was an appropriate factor when evaluating her overall economic circumstances under section 14-10-119). ¶ 11 On several public policy grounds, father also argues that an interpretation of financial resources to include discounted legal services defeats the legislative intent behind section 14-10-119. However, our interpretation does not thwart public policy, nor does it interfere with the statutory purpose as it accomplishes the goal of equalizing the parties’ financial positions. See In re Marriage of Gutfreund, 148 P.3d 136, 141 (Colo. 2006) (section 14-10-119 empowers the district court to equitably apportion costs and fees between parties based on their relative ability to pay); see also In re Marriage of Rubio, 313 P.3d 623, 625 (Colo. App. 2011) (“[I]n a dissolution of marriage case, a [district] court may level the playing field by requiring one spouse to pay the other spouse’s attorney fees.”) (emphasis added); In re Marriage of Anthony-Guillar, 207 P.3d 934, 944 (Colo. App. 2009) (The primary purpose for awarding attorney fees under section 14-10-119 “is to equalize the parties’ 
6 financial positions.”). And we note, as the district court observed, that this case did not involve a truly indigent client. To the contrary, the court emphasized that father, who had an income of nearly $13,000 per month, was “taking advantage” of the discounted legal services and had “negotiated a good deal” with counsel. ¶ 12 Last, we decline father’s invitation to rely on an unpublished opinion from the Kentucky Court of Appeals to reach a different result. We are not bound by an unpublished, out-of-state decision. Patterson v. James, 2018 COA 173, ¶ 40 (unpublished opinions have no precedential value); see Castle Rock Bank v. Team Transit, LLC, 2012 COA 125, ¶ 66 (out-of-state decisions are not binding). ¶ 13 In all, the district court properly considered father’s discounted legal services as a financial resource when determining whether to award attorney fees under section 14-10-119. B. The District Court Did Not Abuse Its Discretion by Awarding Attorney Fees ¶ 14 Nor are we persuaded by father’s assertion that the district court erred when it awarded mother, who had a “far superior economic position,” attorney fees. 
7 ¶ 15 The district court has broad discretion in granting attorney fees under section 14-10-119, and, absent an abuse of that discretion, we will not disturb its decision on appeal. See In re Marriage of Rodrick, 176 P.3d 806, 815-16 (Colo. App. 2007). The court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it is based on a misapplication of the law. In re Marriage of Young, 2021COA 96, ¶ 7. ¶ 16 The district court found that father’s income was $12,770 per month; mother’s income was $16,260 per month; father’s legal expenses were capped at $14,000; mother incurred $93,000 in attorney fees, of which $60,000 remained outstanding; and both parties were highly litigious. The court then ordered father to pay $30,000 to mother, which in addition to his attorney fees, equaled 41% of the total amount of attorney fees while mother was responsible for a total of $63,000 or 59%. Moreover, the court’s division proportionally reflected the percentages of the parties’ combined income, meaning that father’s income was approximately 44% of the parties’ total income and mother’s income was 56%. See In re Marriage of Yates, 148 P.3d 304, 316 (Colo. App. 2006) (no abuse of discretion by the district court in awarding attorney fees 
8 that were roughly proportional to the parties’ income); see also In re Marriage of Laughlin, 932 P.2d 858, 863 (Colo. App. 1997) (same). ¶ 17 We discern no abuse of the district court’s broad discretion in this regard as its order is in accord with the purpose of section 14-10-119. See Rodrick, 176 P.3d at 815-16. III. Mother’s Cross-Appeal A. Selection of High School ¶ 18 Citing Griffin v. Griffin, 699 P.2d 407, 408 (Colo. 1985), mother contends that the district court erred by not allowing her, the “custodial parent,” to decide where the child should attend high school. We disagree. ¶ 19 A division of this court recently rejected that very same argument in In re Marriage of Thomas, 2021 COA 123, a case decided after the district court’s ruling. In that case, the father argued that under Griffin he had the ultimate authority over school choice because he was the child’s “primary residential custodian.” Thomas, ¶ 11. When the supreme court decided Griffin, it relied on the prior version of section 14-10-130(1), C.R.S. 1973, which included the following language: “[T]he custodian may determine the child’s upbringing, including his education . . . .” Griffin, 
9 699 P.2d at 409. However, Thomas recognized that since Griffin, the legislature changed the statutory terminology from “custody” to “parental responsibilities,” and the statute was amended to provide that “the person or persons with responsibility for decision-making may determine the child’s upbringing, including his or her education . . . .” Thomas, ¶ 33. Thus, the current statute “no longer leads to the same outcome it did in Griffin” as “there is no longer a single statutory default decision-maker.” Id. at ¶ 34. When the parents “reach[] an impasse in making a major decision they [are] obligated to make together,” the district court has the authority to break “a parental deadlock between joint decision-makers.” Id. at ¶¶ 38, 36. ¶ 20 We see no reason to depart from the holding in Thomas. We therefore reject mother’s contention that the district court erred by not allowing her to decide where the child attends high school when the parents cannot agree. ¶ 21 Nonetheless, we conclude, in light of Thomas, that the district court erred in finding that it did not have a role to play in resolving the choice of school impasse. Specifically, the district court ruled: 
10 The bigger issue now is going forward where does this child go to school. They have joint decision-making and I don’t think — I know you’re both encouraging me or somebody’s encouraging me to pick what school that she should go to and I’m — I’m declining to do that. I’m not going to tell you what school to go to. She — you folks have to get together, you have joint decision-making, you can decide what school she goes to. Whatever school she goes to, then that’s the school that she’ll end up going to. Although we recognize that Thomas was decided after the district court’s ruling, the court does have the authority to be the tiebreaker when the parents are at an impasse. Thomas, ¶ 38 (district court has impasse-breaking authority on choice of school issue between two parents with joint decision-making responsibility); see also In re Marriage of Dauwe, 148 P.3d 282, 285 (Colo. App. 2006) (upholding the district court’s order granting the mother the authority to obtain therapy for the children because it resolved a long-standing dispute). Thus, we reverse that portion of the order and remand for the district court to reconsider this decision-making issue. The court may rely on the record from the modification hearing, or, in its discretion, conduct further proceedings and take additional evidence as it deems necessary. See In re Marriage of Salby, 
11 126 P.3d 291, 301 (Colo. App. 2005) (allowing the parties to present all relevant evidence affecting the issues on remand). B. Child Support ¶ 22 Next, mother contends that the district court erred in determining that it was foreclosed from considering the child’s private school tuition costs when calculating child support. We agree. ¶ 23 We review a district court’s child support order for an abuse of discretion. In re Marriage of Wells, 252 P.3d 1212, 1213 (Colo. App. 2011). ¶ 24 Under section 14-10-115(11)(a)(I), C.R.S. 2020, reasonable and necessary expenses for attending a private elementary school “to meet the particular educational needs of the child” shall be allocated between the parents in proportion to their adjusted gross incomes. See Wells, 252 P.3d at 1215. ¶ 25 In denying mother’s request to include the child’s private school tuition costs on the child support worksheet, the court said the following: What I can’t do under [section 14-10-115], I cannot order that [m]other will have an extraordinary adjustment in her child support 
12 when it’s an expense for attending any special or private elementary or secondary school to meet the particular educational needs of the child. I usually do that when we have a child on a[n] [individualized education program] or a special plan, they’ve got special needs, they’re autistic, they have to go to a boarding school, they’ve got behavior problems, those are the times when they get to have that deduction. Here I find this child is incredibly bright and smart; and she probably will be the next president of the United States if we play our cards right. And . . . I think . . . if you folks want to put her in school, I think you should make the decision jointly . . . but . . . no one’s going to get . . . a credit for it. ¶ 26 Contrary to the district court’s ruling, the “particular educational needs” of the child are not to be construed narrowly as only encompassing learning disabilities or special educational needs. Instead, child support may include an amount to allow a child to attend a private school if circumstances warrant. See In re Marriage of Elmer, 936 P.2d 617, 622 (Colo. App. 1997) (the “particular educational needs” of a child are not limited to providing private schooling only when a child has a learning disability or otherwise qualifies for a program of special education); see also In re Marriage of Eaton, 894 P.2d 56, 59 (Colo. App. 1995) (same); In re Marriage of Payan, 890 P.2d 264, 265 (Colo. App. 1995) (the district 
13 court erred in determining that, because the children did not have a learning disability or special educational needs, the cost of private school would not be included in the calculation of child support). Also, the fact that the child was currently attending private school may be considered by the court in determining whether the continued enrollment meets the child’s particular educational needs. Payan, 890 P.2d at 265. ¶ 27 The district court therefore erred in saying that it was barred from considering the child’s private school tuition costs as an extraordinary adjustment when calculating child support. See Wells, 252 P.3d at 1213. But the parents have not agreed, and the court has not decided, whether private school is appropriate for the child. So, on remand, if the court decides (or the parties agree) that private school is appropriate, it should reconsider whether the costs of private school permit an adjustment to the child support amount under section 14-10-115(11)(a)(I). IV. Appellate Attorney Fees ¶ 28 Asserting that their financial resources are disparate, both parties ask for appellate attorney fees under section 14-10-119. 
14 ¶ 29 Because the district court is better equipped than an appellate court to resolve factual issues regarding the parties’ current financial circumstances, it must address the parties’ requests on remand. See C.A.R. 39.1; see also In re Marriage of Martin, 2021 COA 101, ¶ 42. V. Conclusion ¶ 30 We reverse those portions of the order concerning school choice and child support, and the case is remanded for the district court to reconsider those issues and to determine the parties’ requests for appellate attorney fees under section 14-10-119. Otherwise, the rest of the order is affirmed. JUDGE ROMÁN and JUDGE BERGER concur.