25CA0182 Marriage of Maloit 11-13-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0182
Weld County District Court No. 20DR167
Honorable Kimberly B. Schutt, Judge

---

In re the Marriage of

Frank Daniel Maloit,

Appellant,

and

Danielle Renae Maloit,

Appellee.

---

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE SULLIVAN
Welling and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 13, 2025

---

Frank Daniel Maloit, Pro Se

Warren, Carlson & Moore, LLP, Bruce W. Warren, Brenda L. Teig, Niwot, Colorado, for Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     In this child support modification case, Frank Daniel Maloit (father) appeals the district court's order modifying the amount of child support payable to Danielle Renae Maloit (mother). We reverse and remand with directions.

## I.     Background

¶ 2     Mother and father, who divorced in March 2018, have three children. The court that dissolved the marriage ordered father to pay mother $1,700 per month in child support.

¶ 3     In December 2023, father sought a reduction in his child support payments because his salary had decreased. In October 2024, the district court ruled that father's salary decrease warranted a downward modification in child support to $1,042 per month. To account for father's overpayment for the period after father had filed his motion but before the court ruled, the court further reduced father's monthly payments to $658 for twenty-four months.

¶ 4     The period of retroactive modification at issue is from the date father filed his motion to modify (December 21, 2023) through the date of the district court's order resolving the motion (October 31, 2024). This period is split into two sub-periods because mother

1

and father's parenting time arrangement for the eldest child had changed at the end of June 2024. From December 2023 to June 2024, the eldest child spent 63.29% of his overnights with father and 36.71% of his overnights with mother. But from July 2024 to October 2024, mother and father had equal parenting time. Mother and father shared equal parenting time for the other two children during the entire period of retroactive modification.

¶ 5     For each sub-period of the retroactive modification, the district court used two separate child support worksheets — one for the two children who split their time equally with the parents and a separate one for the eldest child whose overnight schedule had changed in July 2024. According to the district court's calculations, father overpaid $6,573 for the sub-period from December 2023 to June 2024 and $2,632 for the sub-period from July 2024 to October 2024.

¶ 6     Father moved for reconsideration and calculated the overpayment using one worksheet for each sub-period that averaged the number of overnights for all three children. According to his calculations, father overpaid $7,667 for the first sub-period and $3,787 for the second sub-period. Thus, father's calculations

showed he was owed $2,249 more for his overpayment than the district court had ordered.

¶ 7     In its order denying father's motion for reconsideration, the district court didn't address its use of two worksheets per sub-period.  The court suggested the differences in its calculations and father's may have resulted from father listing himself as the custodial parent for all children, while the district court listed him as the custodial parent for only the eldest child.

¶ 8     Father now appeals.

## II.    Child Support Worksheets

¶ 9     Father contends that the district court erred by using two separate worksheets for each sub-period rather than following section 14-10-115(8)(g), C.R.S. 2025, which instructs courts to average the number of overnights if parents have different parenting time arrangements with different children.  In response, mother argues that section 14-10-115(8)(g) isn't mandatory for temporary child support periods, like a retroactive modification, and that the district court implicitly decided to deviate from the guidelines in the interest of equity.  We agree with father.

## A. Standard of Review and Applicable Law

¶ 10     We review de novo whether the district court applied the correct legal standard when calculating child support. *In re Marriage of Wells*, 252 P.3d 1212, 1213 (Colo. App. 2011).

¶ 11     When parents have different parenting time arrangements with two or more children, the court calculates the number of overnights with each parent by adding the number of overnights each child has with the parent and dividing the sum by the number of children included in the child support calculation. § 14-10-115(8)(g). This calculates the average number of overnights with each parent, which is then used to determine child support. *See* § 14-10-115(8)(b).

¶ 12     The child support guidelines and schedule in section 14-10-115(7) establish a rebuttable presumption of the amount of child support a parent owes. § 14-10-115(8)(e); *see Wells*, 252 P.3d at 1214. A court may deviate from the guidelines and schedule if applying them would be "inequitable, unjust, or inappropriate," but such deviation must be accompanied by findings "specifying the reasons for the deviation." § 14-10-115(8)(e).

¶ 13    In *Wells*, for example, a division of this court reversed a district court's child support order because the court used a "multiple worksheet method" to calculate support without explaining its reasoning.  252 P.3d at 1214.  The division explained that using multiple worksheets "inappropriately treated the children, for child support purposes, as if each was an only child," thus ignoring the approach in the guidelines and schedule that provides for "incremental increases" in support for each additional child in a family.  *Id.*  The General Assembly later codified the *Wells* division's interpretation by enacting section 14-10-115(8)(g).  Ch. 270, sec. 1, § 14-10-115, 2019 Colo. Sess. Laws 2521, 2551.

## B. Analysis

¶ 14    We conclude the district court erred by deviating from the guidelines and schedule when it used two separate worksheets for each sub-period of the retroactive modification period — one for the two younger children whose overnight schedule remained unchanged and another for the eldest child whose overnight schedule changed in July 2024.  Using two separate worksheets, instead of averaging the number of overnights on a single worksheet for each sub-period, inappropriately treated the eldest child as an

only child and inflated the amount of child support father owed. As in *Wells*, the court's approach contravened the guidelines and schedule, which contemplate incremental increases in support for each additional child in a family. *See Wells*, 252 P.3d at 1214. The district court instead should have averaged the children's number of overnights with each parent on one worksheet for each sub-period of the retroactive modification period.

¶ 15    We aren't convinced otherwise by mother's arguments. Mother first argues that the court implicitly deviated from the guidelines and schedule in the interest of equity. But if a court uses two worksheets instead of one, it must explain why the resulting deviation is appropriate. *See id.* (citing § 14-15-115(8)(e)). The district court here didn't make any written or oral findings explaining why it chose to deviate from the guidelines and schedule.

¶ 16    Mother also argues that the temporary nature of the retroactive modification period exempts it from the one-worksheet requirement. But section 14-10-115(1)(c) rejects that notion, stating that the statute applies "to all child support obligations." *See also* § 14-10-115(8)(e) (explaining that the rebuttable presumption created by the child support guidelines and schedule

applies "[i]n an action to establish or modify child support, whether temporary or permanent").

¶ 17     We also reject the contention that the "custodial" parent designation has any impact on the calculations. The term "custodial parent" traditionally referred to the parent who had "exclusive or near-exclusive physical care of the child." *In re Marriage of Alvis*, 2019 COA 97, ¶ 28. But in 1999, the General Assembly removed the term "custodial parent" from section 14-10-115 as part of a broader change in the Children's Code to replace the term "custody" with "parental responsibilities," which includes the separate legal concepts of parenting time and decision-making responsibility. Ch. 310, secs. 1, 42, §§ 14-10-103, -115, 1998 Colo. Sess. Laws 1376, 1398; *see* § 14-10-103(4), C.R.S. 2025; § 14-10-124(1.5), C.R.S. 2025; *In re Marriage of Ciesluk*, 113 P.3d 135, 138 n.4 (Colo. 2005) ("Thus, the term 'sole residential custodian' is no longer viable and has no meaning in the context of this case."). Even if the term still applied, father and mother share parenting time and decision-making responsibility over all three children, rendering neither the "custodial parent" under the traditional definition of the term.

## III.  Disposition

¶ 18    We reverse the order modifying child support and remand for the district court to recalculate the retroactive modification using the average number of overnights on one worksheet for each sub-period of the retroactive modification period as required under section 14-10-115(8)(g).

JUDGE WELLING and JUDGE BERGER concur.